# Richmond.

## THE J. G. WILSON CORPORATION v. JOHN CAHILL.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*Tazewell Taylor*, for the appellant.

*Edward W. Wolcott* and *W. L. Devany, Jr.*, for the appellee.

PRENTIS, C. J., delivered the opinion of the court.

P. H. Wilson, an officer of the J. G. Wilson Corporation, was the owner of stock certificate No. 57 for fifty shares of the common stock of that company of the par value of $100.00. During his lifetime he had delivered it to John Cahill, but had failed to execute the power of attorney necessary to authorize its transfer on the books of the company. There is a letter in the record dated August 23, 1915, from Wilson to Cahill, referring to other transactions between Cahill and the company, in which this appears:

"Regarding the $5,000.00 face value, common stock of the company that I gave you on December 1st, this was and is to be exchanged for voting trust certificates as soon as they are issued. They have been delayed, and may not be issued for two or three months. I promised that should you die while in the employ of the company I would guarantee to pay the sum of at least ($2,500.00) twenty-five hundred dollars to your heirs for this stock. The obligation on my part is of course void should you leave the company without my

written consent. The dividends on this common stock will be paid to you direct when declared."

Wilson was one of the promoters of the company and Cahill had aided him, and this stock appears to have been issued for promotion services. Its value, being dependent upon the future success of the corporation, was problematical at the time it was delivered to Cahill in 1914, and it had little value for some years afterwards. No effort appears to have been made to have the stock properly assigned by Wilson so that it could be transferred to Cahill upon the books of the company. Perhaps the explanation of this is found in the clause of the letter which has been quoted, indicating other agreements between Cahill and Wilson which might have resulted in the return of the certificate to Wilson for value.

Wilson died some time prior to February, 1923, and was at that time indebted to the corporation in a sum in excess of $15,000.00. After Wilson's death, substantial dividends were declared upon the stock of the company during the years 1924 to 1927, inclusive. The gross amount of such dividends upon this fifty shares of stock during those years amounted to the principal sum of $1,812.50. There is no evidence that Cahill sought to have this stock transferred to him during the lifetime of Wilson or thereafter, until just before the letter dated May 27, 1925, from the president of the corporation to Mr. Wolcott, attorney for Cahill, apparently in answer to a letter of May 11th from Wolcott to the company, in which reference is made to the true ownership of this certificate. The company claimed the right to apply the dividends on this stock to the indebtedness of Wilson to the company. At the time they were declared, however,

Wilson was dead and the dividends thereon, but for Cahill's equitable ownership, would have been payable, not to Wilson, but to his personal representative as assets of his estate.

The company having refused to transfer the stock to Cahill, this suit was brought against Wilson's administrator and the company to enforce such transfer. The court properly held, under the evidence submitted, that Cahill was the true owner of the stock, and directed Wilson's administrator, who was a party defendant, to make the proper endorsement upon the certificate, and required the corporation to issue a new certificate or certificates for fifty shares of the capital stock of the company. To this portion of the decree there is no objection.

The court, however, further directed the corporation to pay the $1,812.50 of accrued dividends to Cahill, together with interest thereon from the date of the declaration of each dividend, and complaining of this three errors are assigned.

The first is that the court erred in holding that the dividends so declared should be paid to Cahill. This assignment is based upon the statute, Code, section 3838, which provides that "A person in whose name shares of stock stand on the books of the corporation shall be deemed the owner thereof as regards the corporation  *  *." One exception thereto, which is also statutory, is in Code, section 3839, which provides that "If any person shall, for a valuable consideration, sell, pledge, or otherwise dispose of any of his shares of stock to another, and deliver to him the certificate for such shares, with a power of attorney authorizing the transfer of the same on the books of the corporation, the title of the former (both at law and in equity) shall vest in the latter, so far as may be

necessary to effect the purpose of the sale, pledge or other disposition, not only as between the parties themselves, but also as against the creditors of and subsequent purchasers from the former; subject, however, to the provisions of the two preceding sections.''

■ The sections quoted have little effect upon the rights of persons dealing with stock, as between themselves; they are primarily for the guidance and protection of the corporation. The stock here involved was issued before the adoption of the stock transfer act of 1924, Code (Michie's), section 3848 (2-25).

■ The word "title" is construed by the stock transfer act, Code, section 3848 (23), to mean "legal title and does not include a merely equitable or beneficial ownership or interest." This construction is merely declaratory of the logical rule.

■ These quotations from 6 Fletcher's Cyclopedia of Corporations, which are supported by authority, are noted:

Section 3788. "Where a particular mode of transferring shares of stock is prescribed by the charter of the corporation, or general law, or by its by-laws, compliance therewith may be necessary to render a transfer valid as against the corporation. But the fact that a transfer of shares is not made in the manner prescribed by the charter, general law, or by-laws of the corporation does not necessarily render it void as between the parties. Ordinarily a transfer which is not made in the prescribed mode, but which would be sufficient at common law, will convey at least an equitable title to the purchaser, and he will be protected therein by a court of equity."

Section 3789. "The purpose of such a requirement is to be taken into consideration in construing it, and in

determining the effect of a failure to comply therewith. All the courts agree that such a requirement is intended for the protection of the corporation, so that it may have the means of knowing at any time who are its stockholders, and as such entitled to receive dividends, vote at corporate meetings, and otherwise participate in the management of the corporation, and so that it may take advantage of charter or statutory provisions giving a lien on shares for debts due to it from stockholders, or acquire such a lien by contract with stockholders. * * * Such a provision is not intended to prevent the alienation of corporate stock, or to prescribe an exclusive method whereby a stockholder may divest himself of his title or may assign it to a third party; and hence a failure to comply with it does not affect the validity of a transfer as between the parties thereto."

■ Though the stock transfer act, Code, section 3848 (2), *et seq.*, was not effective until July 1, 1924 (Acts 1924, page 766), the definition contained therein, Code, section 3848 (10), succinctly expresses the obligation of Wilson and the right of Cahill, under the circumstances shown, thus: "The delivery of a certificate by the person appearing by the certificate to be the owner thereof without the endorsement requisite for the transfer of the certificate and the shares represented thereby, but with intent to transfer such certificate or shares, shall impose an obligation, in the absence of an agreement to the contrary, upon the person so delivering to complete the transfer by making the necessary endorsement. The transfer shall take effect as of the time when the endorsement is actually made. This obligation may be specifically enforced."

■ Quoting again from 6 Fletcher's Cyclopedia of Corporations, section 3697, relating to dividends, this appears to be a fair statement: "Since a corporation is merely a debtor to its stockholders after a dividend is declared, it is well settled that it has the right of set off as against stockholders who are indebted to it, and, therefore, when a corporation is indebted to a stockholder for a dividend, and a debt is due to it from the stockholder, it may apply the dividend in satisfaction of the debt."

■ One conclusive reason for holding that the corporation cannot apply these dividends in reduction of Wilson's debt to it is, that they were not declared until after his death, and hence, even if not the property of Cahill, they were assets of Wilson's estate, payable, not to Wilson, but to his personal representative, to be distributed to those entitled thereto, first to the satisfaction of the debts due to his general creditors, and the surplus to those entitled to receive it. *Cemmel* v. *Davis*, 75 Md. 546, 23 Atl. 1032, 32 Am. St. Rep. 412; *Lipscomb* v. *Condon*, 56 W. Va. 416, 49 S. E. 392, 67 L. R. A. 670, 107 Am. St. Rep. 938.

■ The question raised is whether these dividends can be withheld by the company and applied on Wilson's indebtedness merely because the stock stood in Wilson's name on the books of the company, or must be paid to Cahill, to whom they so clearly belong as the equitable owner of the stock. There is in this case no controversy between Wilson's administrator and Cahill, but this does not add to the company's rights, or diminish Cahill's. The appellant company had no interest in any possible controversy between Wilson's administrator and Cahill as to the true ownership of the stock. The company was in the position of a

stakeholder and debtor to the owner? As between the two, Cahill, shown to have been the equitable owner of the stock long before Wilson's death and long before the dividends were declared, is entitled to them. The delivery was effectual as an equitable assignment although no legal title passed for lack of endorsement and transfer on the books of the corporation. 7 R. C. L. 265-6; *First National Bank* v. *Holland*, 99 Va. 502, 39 S. E. 126, 55 L. R. A. 155, 86 Am. St. Rep. 898. There is no error in the decree which so adjudges.

The second assignment of error is based upon the fact that the court not only held that Cahill was entitled to the dividends, but that he was also entitled to recover interest thereon from the several dates of their declaration up to the time of payment.

The rule which we believe is generally recognized is that after a dividend has been declared and set apart, it does not draw interest until demand is made therefor. As a general rule, a stockholder cannot recover interest on a dividend after it has been declared, though it may be allowed after a demand and refusal. Thompson on Corporations, section 5366; 6 Fletcher's Cyc. Corp., section 3695.

It seems to us clear that this assignment is well taken, because Cahill has not brought himself within the provisions of this rule. He has failed to show any demand or refusal to pay him the dividends, or any express or implied agreement for the payment of interest thereon. He simply held the stock, which stood in the name of Wilson, and made no demand upon the company either for its transfer or for the dividends. This is doubtless explained by the fact that he did not know that the stock had in the meantime

become valuable and that dividends on it were being declared. This, however, does not change the rule.

Nor should interest be allowed upon the theory that the company was in the wrong, for even if all of the facts known to Cahill had been brought home to the company, it was still true that Cahill had only an equitable title to the stock. The company, under the facts shown, would not have been justified either in transferring the stock or in paying the dividends thereon until Cahill had first asserted his rights against Wilson or his estate, and taken the necessary legal procedure to establish his ownership and to require the legal transfer of the stock to him, which were conditions precedent to his right to demand the dividends of the company.

In decreeing interest upon the gross amount of these dividends, we are of opinion that the court erred, and this for the reasons indicated.

The third assignment of error is that the stock should have been decreed to be an asset of the estate of Percy H. Wilson, deceased, subject to the claims of his creditors. The reply to this contention is evident from the conceded facts in this case. The creditors of Wilson have no claim upon the stock or dividends referred to merely because he had the legal title. Wilson has had no interest therein since 1915, when he delivered the stock to Cahill for a valuable consideration. It never was an asset of Wilson's estate, as between him and his general creditors. As between Wilson and his creditors, on the one hand, and Cahill on the other, Cahill is and has been the true owner of the stock ever since the inception of the transaction in 1915.

Of course, in this aspect of the case, we are not considering the relations of Wilson to the corporation in

his lifetime. Those questions, so far as they might have affected this case, have been disposed of by what has been previously said in this opinion.

Our conclusion, then, is to amend the decree so as to allow the recovery of interest upon the gross amount of the dividends from the date of the decree, November 4, 1927, instead of from the date when the several dividends were declared. As thus amended the decree will be affirmed.

*Amended and affirmed.*