# Wytheville

## The Hampton Roads Fire and Marine Insurance Company v. Coburn Motor Car Company, Incorporated, etc.

June 16, 1932.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*James E. Heath* and *James E. Heath, Jr.*, for the appellant.

*Tazewell Taylor*, for the appellees.

GREGORY, J., delivered the opinion of the court.

The Hampton Roads Fire and Marine Insurance Company, a corporation, filed its bill against Coburn Motor Car Company, Incorporated, and others for the purpose of having the court distribute among those entitled thereto its assets. All of the defendants demurred to the bill and the court sus-

tained the demurrer but referred the cause to a commissioner to ascertain the assets of the corporation, its indebtedness and the net amount available for the preferred stockholders. The appellant is complaining of the court's action in sustaining the demurrer.

The essential facts may be stated as follows:

T. Gray Coburn died in 1925 insolvent. In his life-time he was a large stockholder in the Coburn Motor Car Company, Incorporated, one of the appellees. He owned a large number of the shares of its common stock and fifteen hundred shares of its preferred stock. This preferred stock was preferred both as to dividends and in the distribution of the company's capital assets and represented the entire issue of that class of stock.

The appellant was a creditor of Coburn and held his note, bearing date of May 12, 1924, for the sum of $10,521.67, payable one year after date with interest from date. In 1925 one payment of $500.00 was made and credited on the note and at the time of Coburn's death approximately $14,000.00 was due. Coburn deposited with the note, as collateral security for its payment with the appellant, two hundred of the fifteen hundred shares of the preferred stock of the Coburn Motor Car Company, Incorporated, there remaining in his (Coburn's) hands at the time of his death thirteen hundred shares. The Seaboard Citizens National Bank of Norfolk, another of the appellees, qualified as administrator, d. b. n., of the estate of Coburn. At the time of Coburn's death he owed the Coburn Motor Car Company, Incorporated, $96,000.00, which, with the accrued interest thereon, aggregated at the time this suit was instituted, approximately $125,000.00. The amount due by Coburn to the corporation arose by reason of withdrawals made by Coburn from the corporation in excess of his salary.

After the death of Coburn in 1925, the directors, who are

also appellees, managed the affairs of the corporation until December, 1929, when it was dissolved by an order of the Corporation Commission. After dissolution the same directors acted as trustees for the purpose of collecting the assets and paying the debts of the corporation and distributing the surplus among the stockholders entitled thereto. After collecting all of the assets and paying all of the debts of the corporation there remained in the hands of the said trustees a net balance to be distributed among the stockholders, by way of a liquidating dividend, of $28,651.28. There are two claimants of this fund, one is, The Seaboard Citizens National Bank, administrator, and the other is the appellant. The administrator claims to be entitled to a dividend based on the thirteen hundred shares held by it, and the appellant claims that it is entitled, not only to a dividend based on the two hundred shares held by it as collateral, but also that it is entitled to the payment of its note in full out of the fund before any amount is paid to the administrator.

In the bill filed by the appellant it alleged that the payment of this note being secured by the said two hundred shares of preferred stock of the Coburn Motor Car Company, Incorporated, it is entitled to payment in full out of the said fund. It claimed in its bill "that in view of the foregoing, it is obvious that the whole of said sum now in the hands of the said directors as trustees should be paid over to your complainant, as the assignee of said two hundred shares of the preferred stock of said Coburn Motor Car Company, Incorporated, to be applied on said note * * *".

The commissioner to whom the cause was referred reported to the court that the appellant was entitled to two-fifteenths of said surplus to be applied to the note held by it, and that the administrator of Coburn's estate was entitled to thirteen-fifteenths of the said surplus. The court, in sustaining the demurrer, by decree adjudged that "the complainant can

only recover in this suit so much of the assets of the Coburn Motor Car Company, Incorporated, as may be represented by the two hundred shares of preferred stock of said corporation, pledged as collateral security by T. Gray Coburn for the note of $10,521.67 mentioned in said bill, and is not entitled to recover and cannot recover any part of said assets represented by the remaining thirteen hundred shares of the preferred stock of said corporation, but that the said Seaboard Citizens National Bank, administrator, d. b. n., of the estate of T. Gray Coburn, deceased, is entitled to recover so much of said assets as may be represented by the remaining thirteen hundred shares of said preferred stock and that, to this extent, the said demurrer should be and is hereby sustained."

The appellant contends that inasmuch as Coburn owed the Coburn Motor Car Company, Incorporated, including interest at the time of the suit, approximately $125,000.00, it would be inequitable to turn over to the personal representative thirteen-fifteenths of the assets of the corporation without requiring a settlement of this indebtedness. Appellant further contends that the court should have required the indebtedness of $125,000.00 due by Coburn to the corporation to be set off against the claim of Coburn's personal representative to the thirteen-fifteenths of the company's assets, since Coburn died insolvent. Appellant also contends that the only way in which this right of set-off could be effectuated would be for the court to treat as done what ought to have been done and in so doing distribute the assets of the corporation just as it would have done if Coburn or his personal representative had paid to the corporation the amount of Coburn's indebtedness of $125,000.00, and if this had been done the total assets of the corporation would have been approximately $153,000.00 and of this, the personal representative being the holder of the thirteen hundred shares of the preferred stock which

passed to it upon Coburn's death, would have been entitled to thirteen-fifteenths of the said amount and the appellant being holder of the two hundred shares, would have been entitled to two-fifteenths of the said amount. If this had been done the note of the appellant would have been paid in full, because two-fifteenths of the $153,000.00 would have been more than $20,000.00.

The court by its decree held that the said thirteen hundred shares of the preferred stock passed to the Seaboard Citizens National Bank, administrator, upon the death of Coburn in 1925 and as against such personal representative there was no such right of set-off as was claimed by the appellant and that the said personal representative was entitled to have paid over to it Coburn's entire share of the assets of the corporation.

The corporation, which is entitled to the debt of $125,000.00 due by Coburn's estate and which is being urged as the basis of the set-off, is not asking that the set-off be allowed. The liquidating trustees of the corporation are resisting its allowance. They were defendants in the original bill. The real contest is not between the corporation and the administrator, but it is between the creditors of an insolvent's estate represented by the administrator, on the one hand, and the appellant, another creditor of the same insolvent's estate, on the other. The debt which is sought to to be used by the appellant as an offset, is not a debt due the appellant by Coburn's estate but a debt due the corporation by that estate. The appellant, by virtue of holding the Coburn note, is a creditor of Coburn's estate and by virtue of holding the two hundred shares of the stock, became a creditor of the corporation when it dissolved and provided, after the payment of all of its debts, the surplus to be returned to the stockholders by way of a liquidating dividend. The appellant's rights as a creditor of the corporation were created at the same time and in the same way

as the rights of the administrator as a creditor of the corporation. The appellant's relation, like the administrator's relation (that of a creditor of the corporation) came into existence in 1929 after the dissolution of the corporation and four years after the death of Coburn.

In the consideration of this case these significant facts must be kept in mind:

■ At the time of his death in 1925 Coburn was insolvent. At that time he was only a stockholder in the corporation and not a creditor. He never became a creditor during his life time. His administrator, in its representative capacity, became a creditor when the liquidation of the corporation was completed. The title to the thirteen hundred shares of preferred stock, vested in the administrator, at the death of Coburn, as assets for the payment of Coburn's debts ratably and equally and for that purpose it was impressed with a trust. The right to the liquidating dividend is a right which accrues to the administrator in its representative capacity. The debt of Coburn to the corporation was one for which the corporation had the right to sue during Coburn's life-time. It could also have sued the estate for this debt after Coburn's death. It had no lien of any kind on the thirteen hundred shares of stock which belonged to Coburn.

■ The question presented by this case, in its broadest sense, is whether or not a solvent corporation, in process of liquidation, can set-off, as against an administrator of a deceased stockholder, a liquidating dividend, declared subsequent to the death of the said stockholder, against an indebtedness due it by said deceased stockholder, created prior to his death and who was insolvent at the date of his death, and whose estate is now insolvent.

· It has been almost universally held, that under such facts the right of set-off is not allowed. The holding of the courts places the refusal to allow the set-off on two grounds: First,

because there is no mutuality in the respective obligations or debts, and second, because to allow a set-off, where the estate, in the hands of an administrator, is insolvent, would in effect destroy the equality in the distribution of such an estate and permit one creditor to be paid in full to the prejudice of the other creditors of the estate.

In 11 R. C. L., page 265, section 300, the rule is stated thus:

"The generally recognized rules and limitations in regard to the doctrine of set-off apply when actions are brought by or against executors and administrators. The most important of these limitations having application to such actions is that the right of set-off may be exercised only where both the original and the counterclaim are in the same right. So, where an executor or administrator sues for a debt arising after the death of the decedent, the defendant cannot set-off a debt due him from the decedent, and the same rule applies against the personal representative when he is defendant. An additional reason of the rule, as applied where the representative brings suit, is that the allowance of the set-off or counterclaim would necessarily destroy the equal and just distribution of the assets belonging to the estate among the creditors in every case where the assets were insufficient to pay all the debts of the deceased."

Again we find the rule clearly stated in 24 C. J., at pages 755 and 756, sections 1867 and 1868:

"In order to warrant a set-off or counterclaim in an action by an executor or administrator, the debts must be mutual, and the principle of mutuality requires not only that the debts should be due to and from the same person, but also to and from the same person of the same capacity. It has been considered, however, that the rule of mutuality is not always controlling, but may be departed from where it appears that permitting the set-off cannot embarrass the administration or prejudice the rights of other persons

interested in the assets. Where an administrator suing as such is insolvent, and a portion of the recovery will belong to him in his individual capacity, defendant may claim as in the nature of a set-off a demand in his favor against plaintiff in his individual capacity.

"In an action on a cause of action accruing after decedent's death defendant cannot set-off a debt due from the intestate in his lifetime. The rule is the same whether the action is brought by the personal representative in his individual or in his representative character, and it applies with equal force whether the contract sued on was made with the personal representative, or with decedent, if no cause of action arose thereon until after his death.

"The reason for the rule is that the allowance of the set-off or counterclaim would necessarily destroy the equal and just distribution of the assets belonging to the estate among creditors in every case where the assets were insufficient to pay all the debts.    *    *    *."

The general principle that a set-off will not be allowed to a defendant when he is sued by a personal representative on a cause of action that never accrued to his decedent in his life time but did accrue to the personal representative in his representative capacity since the death of the decedent was applied in the somewhat ancient case of *Patterson* v. *Patterson*, 59 N. Y. 574, 17 Am. Rep. 385. That decision was placed on the ground that there was no mutuality between the obligations and that they were due in different capacities. In other words the money due from the defendant was not a debt, mutual with that due him. The intestate and the defendant never stood in the relation of mutual debtors to each other and consequently no set-off was allowed. The court after discussing several cases arrived at this clear conclusion:

"The cases above cited are most of them very positive in declaring the rule to be, that in action by an executor upon

a cause of action which has been created since the death of his testator, or which has accrued, or has arisen since that death, the defendant may not set-off a debt against the testator existing in his lifetime. If the debt has been created since the death of the testator it must have been created to the representative, and there can be no doubt; for in such cases there can be no mutuality of indebtedness."

Possibly one of the clearest statements of the principle may be found in 2 *Woerner, The American Law of Administration* (3rd Ed.) 1295, where it is stated thus:

"A defendant cannot cross-claim an individual claim against a suit by the representative as such. And the defendant in a suit by an administrator upon an indebtedness accrued after the grant of letters cannot be allowed to set off a claim which he may have against the deceased; because to do so would give him an undue advantage over other creditors, if the estate should prove insolvent."

A statement of an exception to the general rule requiring mutuality in debts may be found in the very interesting and exhaustive discussion in the case of *People* v. *California Safe Deposit & Trust Co.*, 168 Cal. 241, 141 Pac. 1181, which is reported in L. R. A. 1915A, 309, where it is stated:

■ "When, however, by reason of the special character of an asserted set-off, it appears that in no particular can the rights of any party interested in the assets of the estate be affected by its allowance, or when the estate is solvent and able to pay all claims against it, including the allowed claim of a defendant asserting it as a set-off, the courts in the first instance do not, and in the latter should not, apply the strict rule of mutuality to prevent the allowance of the set-off."

A case directly in point is the case of *Merchants' Bank of Easton* v. *Shouse, Adm'x*, 102 Pa. 488. The facts in that case as disclosed by the opinion are as follows:

"The Merchants' Bank of Easton was incorporated by a special act of the legislature, approved March 14, 1871

(P. L. 350), the business of which was to receive money on deposit at interest, and to invest the same. The act of incorporation was made part of the case stated. The said bank conducted for several years a banking business, but issued no circulating notes for money.

"John Shouse died intestate and insolvent September 19, 1879, and letters of administration on his estate were granted to the plaintiff. At the time of his death he owned 556 shares of the capital stock of said bank, which are now held by the plaintiff, said shares standing in the name of the intestate on the books of the bank. At the time of John Shouse's death he was indebted to the bank, upon notes discounted by the bank, in a sum exceeding $10,000.00 a large part of which indebtedness remains due and unpaid.

"Since the death of said Shouse, the bank went into liquidation, and made a pro rata division of its assets among its stockholders, being two dollars per share, the amount appropriable to Shouse's stock being $1,112.00.

"The bank claims the right to retain this sum as payment or set-off, on account of John Shouse's indebtedness to the bank."

"The opinion rendered on these facts is as follows:

"According to the case stated, which we have before us, John Shouse, at the time of his decease, was the owner of some 556 shares of the capital stock of the Merchants' Bank of Easton, the defendant below, and it also thereby appears that to this institution he died largely indebted. These shares represented his interest in the bank and its assets, and were, to all intents and purposes, personal property, which, after his death, passed to the plaintiff as part of his estate.

"It does not appear that prior to the time of his decease, the bank, which was, as is alleged, in process of liquidation, had converted any part of its corporate assets, represented by the said stock, into money, and applied it on Shouse's indebtedness; at all events, the dividends which form the

subject of the present contention, were declared after his death. Such being the case, unless before that time the bank had a lien upon that stock, it could have none afterwards which would be superior to that of the other creditors of this insolvent estate. In other words, if this stock passed to the administratrix unincumbered by any lien of the bank, it must necessarily follow that she, as trustee of the general creditors, must be regarded as the owner of the money realized by its conversion, and, as such, be entitled to its custody. This view of the case would negative the bank's alleged right of set-off, since its claim on the fund could rise no higher than that of any other creditor."

In Virginia, the identical question has not been presented, but in the case of *Wilson Corporation* v. *Cahill*, 152 Va. 117, 146 S. E. 274, 276, the court said:

"One conclusive reason for holding that the corporation cannot apply these dividends in reduction of Wilson's debt to it is, that they were not declared until after his death, and hence, even if not the property of Cahill, they were assets of Wilson's estate, payable, not to Wilson, but to his personal representative, to be distributed to those entitled thereto, first to the satisfaction of the debts due to his general creditors, and the surplus to those entitled to receive it. *Gemmell* v. *Davis*, 75 Md. 546, 23 Atl. 1032, 32 Am. St. Rep. 412; *Lipscomb's Adm'r* v. *Condon*, 56 W. Va. 416, 49 S. E. 392, 67 L. R. A. 670, 107 Am. St. Rep. 938."

Counsel for appellant in order to escape the force of the statement made in the last case referred to contends that it is nothing more than *obiter* because, as claimed by him, this statement was unnecessary to a decision of the case. We will not pass upon the question as to whether the language used was *obiter*, because whether *obiter* or not we adhere to the principle announced and apply it to the instant case. It is in accord with the great weight of authority and, upon principle, is sound.

*In re Starbuck's Ex'x*, 251 N. Y. 439, 167 N. E. 580, 581,

65 A. L. R. 216, relied upon by the appellant, the decision was based on a New York statute which provided that if a stockholder be indebted to a corporation, it might refuse to consent to a transfer of his stock until the payment of the indebtedness. The court said: "The statute gives the corporation the right to withhold registry of the transfer of the stock until the indebtedness is paid. It is unimportant whether we classify that right as a lien or give it another name. It bears at least some analogy to a lien though the stockholder maintains possession of the stock * * *." The opinion was based upon the construction of the statute and to some extent, on the theory that the corporation by virtue of the statute, had a right which bore some analogy to a lien on the stock.

In the instant case we are not dealing with the application of a similar statute nor are we considering that the corporation had any lien on the stock, for in fact it had no lien at all.

In *Marcus Shipping Ass'n* v. *Barnes*, 169 Iowa 377, 151 N. W. 525, another case relied upon by the appellant, the court decided that as against a trustee in bankruptcy of a stockholder, a corporation could set off a debt due it by the stockholder against a liquidating dividend declared by the corporation prior to the bankruptcy of the stockholder. This case, in our judgment, is not in point. The rights and liabilities of the parties had accrued and were fixed before the bankruptcy. No personal representative of an insolvent stockholder's estate was involved, and mutuality of obligations was existing before the trustee succeeded to the estate of the bankrupt. If the right to the liquidating dividend had accrued to the trustee subsequent to the adjudication in bankruptcy, the court might have reached a different conclusion.

Counsel for the appellant has cited us no case where a set-off has been allowed under circumstances similar to those of the instant cases. The authorities he has referred

us to are either distinguishable upon the facts or they apply the exception to the general rule which is recognized in the case of *People* v. *California, etc., Co., supra,* where it was held that a set-off might be allowed under certain conditions, such as where the estate was solvent and in no particular would the rights of any party interested in the assets of the estate be affected by its allowance. Some of the cases relied upon clearly show that there existed mutuality in the respective debts. When this appears, generally a set-off is allowed. It may, under certain circumstances, be allowed although strict mutuality is not present, if the estate is solvent and no other interested person will be prejudiced in his rights by its allowance and all of the creditors of the estate will be paid their respective claims in full.

We have not attempted to cite all of the cases bearing upon this very interesting question because it is deemed unnecessary. For those who may be interested, the following citations, which by no means embrace all of the cases, may be referred to: *Albert K. Grafton* v. *North-American Transp. & Trading Co.,* 216 Ill. App. 262; *Cook on Corporations,* volume 2 (6th ed.), 526; *Henderson* v. *Electric Loop Land Co.,* 96 Cal. App. 576, 274 Pac. 445; *Cleveland County Bank* v. *Doster,* 176 Ark. 1163, 5 S. W. (2d) 334; *Harding* v. *Shepard,* 107 Ill. 264; *Bishop* v. *Dillard,* 49 Ark. 285, 5 S. W. 341; *Shaw* v. *Gookin,* 7 N. H. 16; *Dayhuff* v. *Dayhuff's Adm'r,* 27 Ind. 158; *Padgett* v. *Bank,* 141 Mo. App. 374, 125 S. W. 219; *Colby* v. *Colby,* 2 N. H. 419.

By operation of law the title to the thirteen hundred shares of stock, upon Coburn's death, vested in the administrator, for the equal benefit of all of his creditors. There was at that time no lien upon the stock and since then none has been created upon it except the trust it has been impressed with in the hands of the administrator for the equal benefit of the numerous creditors of Coburn. If Coburn had so desired, he could have sold the stock and the corporation would have had no complaint. After his death

the administrator could have sold it and the corporation still would have had no ground for complaint. The right to the liquidating dividend is one which never was possessed by Coburn in his life time but has since then accrued to the administrator in his representative capacity. No mutuality has ever existed between the claim of the administrator against the corporation for the liquidating dividend and that of the corporation against Coburn, which was created prior to his death, in his individual right. If the offset were allowed in this case, the rule that there must be equality in the distribution of an estate of a decedent would be violated and set at naught and the effect would be that one creditor of the estate (the appellant) would thereby be preferred over the other creditors of that estate. There appears to be no peculiar circumstance or equity in this case which renders it just and proper that an exception to the general rule should be applied.

Point is made by counsel for appellant that if the decree is upheld a peculiar situation will be brought about in the final settlement of the accounts between the administrator, the corporation and the appellant. It is suggested that when thirteen-fifteenths of the assets of the corporation are turned over to the administrator, it will have to declare a dividend and disburse it to the creditors of Coburn's estate, and the liquidating trustees of the corporation will receive back their ratable share and this will in turn be disbursed by them and the administrator will receive its ratable share and disburse, and so on indefinitely. The final settlement of the accounts may present a perplexing situation but this is a consequence that we are not to deal with here. Adequate machinery will be found in the trial court to justly and accurately deal with that problem when it is presented.

Our conclusion is that the trial court properly refused to allow the set-off as contended for and that the decree should be affirmed. *Affirmed.*