## Supreme Liberty Life Insurance Co. v. Ridley's Administrator.

(Decided Nov. 22, 1935.)

DENNIS HENDERSON and EARL B. DICKERSON for appellant.

JOSEPH J. KAPLAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

A. B. Ridley died intestate while a resident of Louisville, Jefferson county, Ky., on March 31, 1934. On September 8, 1927, he contracted with the appellant and defendant below, Supreme Liberty Life Insurance Company, for a policy on his life for the amount of $3,000, which the defendant agreed and promised to pay to his estate upon his death. Following his death, appellee and plaintiff below, Liberty Bank & Trust Com-

pany, was appointed the administrator of his estate, and it filed this action against defendant in the Jefferson circuit court to recover the face value of the policy, it being in force and effect at the time of his death. Prior to his death insured borrowed from defendant $175.54, for which amount he executed his note to it and pledged as security therefor his policy pursuant to provisions therein contained. Prior to his death he became surety on a note his principal executed to defendant for the sum of $21,000, and to secure it the principal pledged to defendant a long list of collateral intangible securities. At the time of the death of the insured (who was surety on the latter note), that indebtedness had been reduced to near $9,000, with about $18,000 of the pledged security unappropriated, and it is not claimed that the balance of the indebtedness represented by that note may not or cannot be satisfied from that source. Defendant answered the petition by pleading the amount due on the two notes as offsets against the amount of the policy sought to be recovered.

Plaintiff filed a demurrer to the paragraph of the answer relying on the balance due on the $21,000 indebtedness as a set-off and the court sustained it, whereupon defendant declined to plead further, and judgment was rendered against it for the amount due on the policy less the first note mentioned above of decedent to defendant amounting to $175.54, with which the court credited the judgment because the policy had been previously pledged by the insured to secure it—and from that judgment defendant prosecutes this appeal.

It will thus be seen that the question for determination is the single and sharp one of—whether or not the indebtedness represented by the $21,000 note referred to (and for the security of which the policy was in nowise pledged) may be relied on as an offset to the administrator's action to recover on the policy by crediting its amount, admitted to be due from defendant, on the unpaid balance of that debt? Counsel for defendant in their effort to overturn in this court the judgment of the learned trial one devote a considerable portion of their brief to a discussion of the doctrine of "Equitable Set-off," which they claim may be invoked by their client in this case, since it was alleged in the answer that the insured at the time of his death was insolvent, or at least we take it that such was their intention when they repeatedly stated in the answer and

its various amendments that "the plaintiff is insolvent." Literally speaking, that phrase means that the administrator of the insured's estate was insolvent, but, since the case is argued here upon the theory that the estate of the insured was insolvent and that the right for which counsel contend is bottomed upon that hypothesis we will construe the inserted language from the answer as though it charged that the estate of the decedent and not that the plaintiff as the personal representative of the estate, was insolvent.

The fact of insolvency, in so far as it may be a ground for the application of the doctrine of "equitable estoppel," was first promulgated by equity tribunals, and has been since so applied, so as to allow the defendant the right of set-off when his asserted claim was not one that under the prevailing rule, would be available at law. As, for instance, the offset claim might be one sounding in tort, and therefore an unliquidated demand of defendant, in which case he would, nevertheless, under the doctrine of equitable estoppel, be allowed to assert it against an insolvent antagonist, or where the latter was a nonresident. But we have not been cited to any case where the right of "equitable set-off" was allowed where the statutory right to do so would be disallowed, when the respective claims were based on contract and liquidated in amount. The authorities seem to be of one accord that the right of set-off will be disallowed when to do so would destroy or impair the equities of third parties, notwithstanding the right might be bottomed on all of the elements of an equitable set-off. One of the fundamentals for the upholding of the right of set-off, whether it be a statutory one at law or an equitable one, is that the claims involved in the litigation must be mutual as between the parties and in the same capacities. To elucidate and enlarge upon that statement would require the discussion of the question to an extent not required in the disposition of the question as here presented, and for that reason we will not undertake that task—referring the reader to the various discussions of the subject as found in text authorities and especially under the headings "Set-off and Counter-claim" as contained in all legal encyclopedias upon the subject.

The narrow question that we have here is, whether a debt due from the decedent individually to defendant may be set off against a claim maturing in favor of the

former's personal representative after his death, notwithstanding the decedent may have been insolvent at the time of his death. The question was first presented to this court in the case of Burton v. Chinn's Adm'r, Hardin, 252, 260, and the right to do so was disallowed. It was again presented in the case of Crews v. Williams, 2 Bibb, 262, 4 Am. Dec. 701, and Chief Justice Boyle, in writing the opinion for the court, disallowed the right of offset under such circumstances, and in doing so said: "It is a well settled principle, that where an executor sues for a cause of action arising after the death of the testator, the defendant cannot set off a debt due to him from the deceased in his lifetime. Willis 103, Burton v. Chinn's Administrator, Hardin, 252. For if setoff of that nature were permitted, it would frequently alter the course of distribution, and subject the executors to a devastavit, as by that means debts of an inferior dignity would be frequently discharged before debts of a superior degree." The rule as so declared is in complete accord with all text-writers on the subject so far as we have been able to discover. We have found no case holding to the contrary.

The text in 57 C. J. 452, sec. 101, says: "In an action on a debt payable to an administrator, a debt due defendant from the intestate cannot be set-off, the demands being in different rights." A case cited in support of that text is Rapier, Adm'r, v. Holland and Bruce, Minor (Ala.) 176, wherein the court in its opinion says: "In an action on a promise made to an administrator, a debt due from his intestate cannot be set off: the demands are in different rights: to set off the last against the first might do injustice to the rights of other creditors," etc. In 11 R. C. L. 265, sec. 300, under the heading of "Necessity of Set-off Being in Same Right," the text says: "So, where an executor or administrator sues for a debt arising after the death of the decedent, the defendant cannot set off a debt due him from the decedent, and the same rule applies against the personal representative when he is defendant. An additional reason of the rule, as applied where the representative brings suit, is that the allowance of the setoff or counterclaim would necessarily destroy the equal and just distribution of the assets belonging to the estate among the creditors in every case where the assets were insufficient to pay all the debts of the deceased."

Supporting that excerpt there is cited in notes 8 and 9 thereto cases from many state supreme tribunals, one of which is that of Crews v. Williams, supra, from this court. Another well-considered one is that of Rich v. Hayes, 101 Me. 324, 64 A. 656, 115 Am. St. Rep. 321, 8 Ann. Cas. 304. The text in 24 R. C. L. 873, sec. 80, in treating and discussing the rule under consideration, says: "The general rule is well settled that, in actions by executors or administrators upon a cause of action arising to them after the death of the testator of intestate, a defendant cannot set-off a demand against the decedent, existing at the time of his death." A number of cases are cited in note 9 to that text, among which is that of People v. California Safe Deposit & T. Co., 168 Cal. 241, 141 P. 1181, L. R. A. 1915A, 299, and annotations thereto in the last publication. The text (24 R. C. L.) continues by saying: "Another reason for denying the right of set-off has been not so much a want of mutuality in the debts as that the allowance of such a set-off might disturb the just and equal distribution of the assets of the estate in any case where it was uncertain, from the unsettled condition thereof, whether the assets were sufficient to pay all the debts of the decedent; or, in the case of an estate which was actually insolvent, the allowance of such set-off would not only prevent a pro rata distribution among its creditors, but, on the contrary, would give the creditor claiming the benefit of a set-off an undue preference over other creditors of the estate to the extent of full payment of his claim. The courts have, however, not confined the reason as to possible unequal distribution of assets to instances where the estate was apparently insolvent, but have relied upon it even in instances where it appeared that the estate was solvent. When, however, by reason of the special character of an asserted set-off, it appears that *in no particular* can the rights of any party interested in the assets of the estate *be affected* by its allowance, or when the estate *is solvent* and able *to pay all claims* against it, including the allowed claim of a defendant asserting it as a set-off, the courts in the first instance do not, and in the latter should not, apply the strict rule of mutuality to prevent the allowance of the set-off." (Our italics.) The last sentence embodies the modern rule for upholding of "equitable set-off."

A later case involving the principles we have dis-

cussed is that of Hampton Roads Fire & Marine Insurance Co. v. Coburn Motor Co., 158 Va. 675, 164 S. E. 723, 84 A. L. R. 731. The text authorities to which we have referred are cited and relied on in that opinion, with the additional text in 24 C. J. pp. 755, 756, secs. 1867, 1868. In the latter section it is stated, in substance, that a debt of the decedent created in his lifetime cannot be pleaded as a set-off to one accruing to his personal representative after his death, ''and it [that rule] applies with equal force whether the contract sued on was made with the personal representative, or with decedent, if no cause of action arose thereon until after his death.'' In support of that text, there is cited the domestic Burton Case, supra, and those of Hancock v. Hancock's Adm'r, 69 S. W. 757, 24 Ky. Law Rep. 664, and Dunn v. Carpenter's Ex'rs, 10 Ky. Law Rep. 494. The text, later on in the section and on page 756 of the volume referred to, gives as a reason for the rule ''that the allowance of the set-off or counterclaim would necessarily destroy the equal and just distribution of the assets belonging to the estate among creditors in every case where the assets were insufficient to pay all the debts.'' An illuminating annotation follows the Coburn opinion as published in 84 A. L. R. 738, and which cites and discusses other cases supporting the same conclusions.

We deem further citation of additional texts or other authorities unnecessary to establish the principle that the element of mutuality of debts is generally essential to the right to rely on any character of estoppel, and that a debt due from a decedent to defendant may not be set off against a debt accruing to the personal representative of the decedent in an action by the representative to collect that subsequently accruing debt. There is no departure anywhere from that rule, except possibly to the extent of the modification found in the latter part of the inserted excerpt from 24 R. C. L. supra, but which does not embrace the situation here presented. Whether the pleaded offset would nevertheless be allowed in this case if decedent's estate was solvent, or if defendant was the only creditor of the decedent and the size of its claim rendered the estate of the decedent insolvent, are questions which we need not determine, since they are neither argued nor presented.

. But, it is insisted by counsel for defendant that the claim for the amount of the insurance sought to be col-

lected by plaintiff in this case is not one accruing to the administrator *after decedent's death,* and, therefore, the case is one within the rule of requisite mutuality of rights. If that contention is true, there would be sounder and more convincing grounds for the insistence that the court erred in disallowing the set-off in this case; but we are persuaded that counsel are in error when they argue that the indebtedness due upon the policy is one that *accrued* to the decedent in his lifetime, and, consequently, not one that accrued for the first time in favor of his personal representative after his death. The Court of Appeals of Georgia, in the case of Jefferson Standard Life Insurance Co. v. Rankin, 39 Ga. App. 373, 147 S. E. 157, 158, had before it the *exact* question involved in this case, i. e., the right of an insurance company in an action against it by the personal representative of an insured intestate to set off against the policy claim a debt of the latter in favor of defendant which was created before insured's death, and was an obligation entirely divorced from the policy, and the right to plead such claim as an offset was denied. The opinion in that case starts out by saying: "A contract of life insurance, in so far as it obligates the insurer to pay an indemnity upon the death of the insured, does not become a debt until after his death, and therefore is not collectible in the right of the insured. * * * Therefore a debt due by the deceased to the insurance company, not being a debt in the right of the representatives of the estate, is not a matter for set-off against the debt arising under the insurance policy to the representatives of the estate and which was not a debt contracted in the lifetime of the deceased." To that excerpt from the opinion there is cited by the court a number of cases from both the state and federal courts, each and all of which approve by analogy or expressly, the same principle, and we have been unable to find any case to the contrary, nor has any been cited to us by diligent and resourceful counsel.

The claim sued on is one that never had any existence, except potentially, until after the death of the insured. He directed by the policy contract he entered into that the proceeds arising therefrom after his death should augment the trust fund which the assets of his estate became for the payment of his debts, and it is upon the principle that such a trust fund in the hands of the personal representative of a decedent must be

administered pro rata between or among his creditors, after deducting exemptions and costs of administration, that the right of set-off is denied. If the estate is insolvent, and there are more creditors than one, that universally administered rule would be violated if an offset like the one herein contended for should be allowed, and it is at this point and for that reason, that counsel are misled in their earnest endeavor to bring the facts of this case within the doctrine of "equitable set-off" upon which they confidently rely. On the contrary, the conclusion is inescapable that to allow the setoff under the facts presented would be most unequitable to other creditors than defendant.

But counsel cite the cases of Carr v. Hamilton, 129 U. S. 252, 9 S. Ct. 295, 32 L. Ed. 669, and Boyden v. Massachusetts Mutual Life Insurance Co., 153 Mass. 544, 27 N. E. 669, the latter of which is an opinion rendered by the Supreme Judicial Court of Massachusetts in 1891 as supporting their position. The opinion in the last case was expressly based upon chapter 168 of the public statutes of that state in existence at that time, section 12 of which said: "In an action by an executor or administrator, a demand against his testator or intestate, which at the time of his death belonged to the defendant, may be set off in the same manner as if the action had been brought by the deceased." We find nothing in the opinion indicating that the court would have arrived at the conclusion it did, had it not been for that statute which it construed to be broad enough to permit the asserting of the set-off therein relied on. The Supreme Court of the United States in the Carr Case based its opinion upon these two facts appearing in the case: (1) That "The policy was not an ordinary one, payable only at the termination of the life insured, but was what is sometimes called an 'endowment policy,' payable at a certain time at all events, or sooner if the party should die sooner; and the premiums were all to be paid within a certain limited time, to-wit, 10 years"; and (2) that the endowment feature of the policy created as much of a contingent claim in favor of the insured as it did in favor of the contingent beneficiary if insured died before the maturity of the policy for his benefit, and which in that event would be collectable in his lifetime. Furthermore, that he had created the debt sought to be employed as an offset "on the faith of the insurance, and in expectation of possibly meeting his

own obligation to the company by that of the company to him." At the time of the litigation in that case, the insured was yet alive, and would possibly outlive the endowment period, and which if done would mature the policy as a debt due to him. It was because of such facts and none other that the court allowed the offset in that case. The differentiations that we pointed out distinguish the Massachusetts case referred to, and the one of the Supreme Court, from the instant one and confirms our statement supra, that no case that we have found or to which we have been cited militates against the general principles hereinbefore discussed.

We therefore conclude that the court properly determined the legal issue as it did, and for which reason the judgment is affirmed.

Whole court sitting.