GRACE H. RODGERS, ADMINISTRATRIX OF THE ESTATE OF WILLIAM CLAYTON RODGERS v. MRS. E. B. TINDAL

No. 7910SC704

(Filed 20 May 1980)

**Executors and Administrators § 31— sale of assets after insolvent decedent's death — action to recover sales price — setoff for decedent's debts improper**

> The trial court erred in entering judgment allowing defendant to set off the amount owed by decedent to defendant at the time of decedent's death against defendant's debt owed to plaintiff administratrix for the *post mortem* purchase of assets in decedent's insolvent estate, since to allow defendant to collect more in her role as a creditor merely because she "purchased" assets from the estate would unduly prejudice all other creditors, and defendant's counterclaim against the estate was limited to her pro rata share of the funds available for her class of creditors.

APPEAL by plaintiff from *Hobgood, Judge.* Judgment entered 6 July 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 7 February 1980.

On 8 November 1975, William Clayton Rodgers died. On 5 December 1975 Grace H. Rodgers became the administratrix of the decedent's estate.

At the time of the decedent's death, the decedent was operating a Tastee Freeze in Apex, North Carolina. The building was leased by the decedent from the defendant appellee in this case. At the time of decedent's death, the decedent was indebted to the defendant for the following items:

| | |
|---|---|
| Balance due for purchase price of inventory | $2,572.09 |
| Ten percent of October sales, due as rent under the terms of the lease agreement | $3,016.12 |
| Ten percent of sales from November 1 through November 8, as rent under the terms of the lease agreement | $ 535.64 |
| Decedent's phone bill paid by defendant | $ 25.36 |

| | |
|---|---|
| Decedent's insurance premium paid by defendant | $ 88.90 |
| Decedent's payroll due to employees paid by defendant | $ 155.80 |

Immediately following the death of the decedent, the defendant and the plaintiff entered into an oral agreement, whereby the defendant purchased from the plaintiff the inventory of products and accessories ($5,643.42) and equipment ($2,500.00) for a total price of $8,143.42. In addition, at the time of the decedent's death there was $314.08 in cash money in the cash register in the Tastee Freeze building. This latter sum has been retained by the defendant. Also, following the death of the decedent, the defendant received from an employee of the decedent the sum of $50.00 which was repayment of a loan that the decedent had made to the employee.

The estate of the decedent is insolvent to the extent that its liabilities exceed the assets by at least $30,000.00.

The plaintiff-appellant brought this action to recover the sum of $8,507.50. In her counterclaim the defendant asserted that $6,604.85 was owed to defendant by the decedent and that this amount should be offset against the amount owed by the defendant to the decedent's estate.

The trial court entered a judgment which entitled the plaintiff to recover $1,902.65 plus interest after 8 November 1975.

*Joslin, Culbertson, Sedberry & Houck by Charles H. Sedberry; Savage & Godfrey by David R. Godfrey for plaintiff appellant.*

*Hollowell, Silverstein, Rich & Brady by Ben A. Rich for defendant appellee.*

CLARK, Judge.

The question presented in this appeal is whether the trial court erred in entering the judgment in this action allowing the defendant to set off the amount owed by the decedent to defendant, at the time of the decedent's death, against defendant's debt

owed to plaintiff for the *post mortem* purchase of assets in the decedent's insolvent estate. We now reverse.

This case is controlled by *Pate v. Oliver*, 104 N.C. 458 (1889), in which an action was brought by the creditors of an intestate's estate against the administrator of the estate on his administrator's bond. At the time of his death, the intestate was engaged in the turpentine business and had leased for the year turpentine "boxes" for certain stipulated sums, payable at different periods. The administrator sold the turpentine in the boxes and the unexpired leases thereon. In certain instances the lessors were purchasers of the turpentine and unexpired leases. In actions brought by the administrator to recover the purchase price, the lessors interposed as a setoff or counterclaim the amount agreed to be paid by the intestate as rent for the whole year. On appeal the Supreme Court held:

> "The estate is insolvent, and in such cases it is well settled that no counterclaim can be allowed which will give an undue priority to any creditor, and thus defeat the rights of the others to have the assets applied *pro rata* to their claims. (Citations omitted.)
>
> The application of the proceeds of the sale of the unexpired terms as set-offs falls within the condemnation of the foregoing principle. They should have been collected and applied, like other assets, to the payment of the debts . . . ."

104 N.C. at 465.

The defendant asserts that *Pate* is not controlling because (1) the decision is an old one; and (2) the cases upon which *Pate* relies are not sound precedent for *Pate*. We are not persuaded by the first of these arguments and we are not at liberty to reverse a decision of our Supreme Court.

The defendant, however, contends that the general hierarchy of priorities for the payment of claims against a decedent's estate in North Carolina, is not applicable because the defendant is both a creditor and a debtor of the estate. This argument does not bear up to close scrutiny. While it is true that a setoff would be allowed with respect to debts (mature or unmature) existing *before* decedent's death (and this rule does not only apply to banks) this rule does not apply where, as here, the defendant

became a debtor of the estate *after* the insolvent decedent's death, the time at which the proportional rights of *all* creditors become vested. To allow the defendant to collect more in his role as a creditor merely because he "purchased" assets from the estate would, as the court in *Pate* observed, unduly prejudice all the other creditors. Contrary to the argument of the defendant, we will not "do equity" as between the estate and defendant at the inequitable expense of all the other creditors of the estate. This is precisely the kind of arrangement which G.S. 28A-19-13, set forth below, was designed to prevent:

> "No personal representative or collector shall give to any claim any preference whatever, either by paying it out of its class or by paying thereon more than a pro rata proportion in its class."

This result is supported by numerous cases in other jurisdictions. *Barber v. Westchester Bank and Trust Company*, 205 Misc. 673, 129 N.Y.S. 2d 376 (1954); *Supreme Liberty Life Insurance Company v. Ridley's Administrator*, 261 Ky. 403, 87 S.W. 2d 940 (1935); *Hampton Roads Fire & Marine Insurance Company v. Coburn Motor Car Company*, 158 Va. 675, 164 S.E. 723 (1932); *Mahon v. Harney County National Bank*, 104 Or. 323, 206 P. 224 (1922); *Laighton v. Brookline Trust Company*, 225 Mass. 458, 114 N.E. 671 (1917); Annot. 36 A.L.R. 3d 693 (1971); Annot. 7 A.L.R. 3d 908 (1966).

We do not see this result as inconsistent with the procedural rules allowing a setoff to be pleaded as a counterclaim. Rule 13(b), N.C.R. Civ. P. The mere fact that one may plead a right does not determine the extent to which that right exists. Here defendant's counterclaim against the estate is limited to his pro rata share of the funds available for his class of creditors. This outcome may be harsh, but it is no harsher than the consequences of the insolvency faced by all of the creditors in his class.

Reversed.

Judges HEDRICK and VAUGHN concur.