(Decided 16th March, 1892.)

THOMAS GEMMELL, and MALCOLM SINCLAIR *vs.* HENRY G. DAVIS & Co., and others.

*Corporation—Lien upon Stock—Set-off—Transfer of Stock — Vendor and Vendee, and Pledgor and Pledgee of Stock —Dividends— Ex parte Notice.*

No lien exists at common law in favor of an incorporated company upon the stock of any shareholder to satisfy or secure a debt due by him to the company; and unless created by statute, or by the charter, or perhaps, in some instances, by a usage brought to the knowledge of and acted on by both parties, it does not exist at all.   And where the company has no such lien it is in. no position to resist or prevent a transfer of the stock by the shareholder to some one else.

But the right of a corporation to withhold a dividend from a stockholder who is indebted to it rests upon an entirely different principle.    It is the right of set-off, for the dividend is a simple debt owing from the corporation to the shareholder.

As in every other case to which this doctrine of set-off is applicable, the debt—that is the dividend—due by the corporation must be payable by it to the person from whom the obligation to the corporation is demandable.

If the stock has passed into the hands of a third party before the dividend has been declared, the right of set-off is gone, because a dividend declared after a transfer of stock has been made belongs to the assignee and not to the assignor.

Gemmell and Sinclair *vs.* Davis & Co.

As between vendor and vendee, or pledgor and pledgee of stock, a transfer on the books of the company is not essential to perfect an equitable title in the vendee or pledgee.

Dividends declared during the continuance of the pledge belong to the pledgee, though he is not registered as owner on the corporate books. If not so registered, and the corporation pays the dividend in good faith, and without notice of the transfer, to the nominal owner, the payment would be undoubtedly a good one.

But a pledgee who neglects to notify the corporation that he holds the stock in pledge, or to take the proper steps to secure title to the stock in his own name, will not be protected against the lien of the corporation upon the stock to secure the payment of an indebtedness contracted to the company by the pledgor in the meantime, and subsequently to the pledge of the shares.

Where the president of a corporation makes a pledge of his individual stock of the corporation without making a transfer thereof upon the books of the corporation, his knowledge of the transaction is not binding upon the corporation, he not then being engaged in its business, and not acting in his capacity of president.

Where a corporation, although not a going concern, is a party to an equity proceeding, it has like notice with every other party thereto of everything disclosed by the record.

Where the papers relating to a pledge of stock, fail to disclose the indebtedness for which the stock is pledged, the statement of what debt it was pledged to secure, contained in a subsequent written assignment of the same stock made by the pledgor to a third person, is merely *ex parte*, and cannot impair the rights of the original pledgee.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and MCSHERRY, J.

*William L. Marbury,* and *W. Irvine Cross,* for the appellants.

*John Prentiss Poe, Attorney-General,* and *William Pinkney Whyte,* for the appellees.

McSHERRY, J., delivered the opinion of the Court.

When this case was last before us, (73 *Md.,* 530,) the order ratifying the auditor's report was affirmed in part and reversed in part, and the cause was remanded that a new audit might be stated in conformity to the decision then rendered. By that decision sundry claims against the North Branch Company were held to be just debts due by that company, and were directed to be paid in full out of the fund in Court. The balance of the fund was declared to belong to the stockholders of the North Branch Company; and it was ordered and decreed that this balance should, in the new audit, be distributed *pro rata* amongst those stockholders. After the record had been remanded and had reached the lower Court, a new audit was stated wherein all the debts due by the North Branch Company were allowed out of the fund, and the balance distributable to the shareholders was ascertained to be $20,370.04. William A. Brydon at one time owned four hundred and eighty-eight shares of the stock; fifteen shares were held by other persons, chiefly to qualify them as directors, and Gemmell and Sinclair hold the remaining four hundred and. ninety-seven. Attorney-General Poe and Mr. William Walsh, who conducted the litigation for Brydon from the beginning of the protracted controversy now nearly at an end, filed an order entering to their own use one-third of the amount to which Brydon's stock was entitled, and Henry G. Davis and Company filed a petition claiming as assignees of Brydon's stock, the dividend payable thereon. The certificates of stock were produced, and upon the back of each certificate there was written a full assignment, dated November the thirteenth, 1888, and duly executed by Brydon. No transfers were ever made on the books

of the company. Gemmell and Sinclair, the minority stockholders, filed a petition in the case alleging that Brydon was insolvent and claiming that he was a debtor to the North Branch Company in an amount exceeding twenty thousand dollars. They prayed that this alleged indebtedness might be set off against the dividend distributable to Brydon's stock. The auditor allowed the claim of Messrs. Poe and Walsh, and distributed the balance of the Brydon stock dividend to abide the further order of the Court. The Circuit Court of Baltimore City ratified the audit, and awarded the balance of the fund so audited to abide its further order to Henry G. Davis and Company and Mrs. Susan V. Brydon, the wife of William A. Brydon. From this order Gemmell and Sinclair took the pending appeal.

There was some additional evidence taken relative to the ownership of Brydon's stock. It appears from this evidence that Brydon's stock was first pledged by him to Henry G. Davis and Company on August the twenty-seventh, 1874. No assignment was then endorsed on the certificates, but the certificates were placed by Brydon in an envelope, and were delivered to one of the members of the firm of Henry G. Davis and Company, and upon or accompanying the envelope was this memorandum, viz., "August 27th, 1874. Five hundred and three shares stock of the North Branch Company William A. Brydon placed in the hands of W. R. Davis as collateral for certain advances by H. G. Davis & Co. Received August 27th, 1874, $400. W. A. Brydon." Subsequently the assignment of November 13th, 1888, was written on the certificates, which, since their delivery on August 27th, 1874, have been continuously in the possession of Henry G. Davis and Company. Brydon testified that the assignment was made for the purpose of pledging the stock as collateral security for the payment of the Gouverneur lien, and for a loan of four hun-

dred dollars; though Henry G. Davis and Company claim that the pledge was intended to secure numerous other items of indebtedness on the part of Brydon to them. It further appears that on the twenty-eighth day of October, 1876, Brydon executed the following transfer of the same stock to his wife, viz., "For value received, I hereby assign and transfer to Susan V. Brydon four hundred and ninety-two shares of the capital stock of the North Branch Company, being certificates No. * * * * said stock being now held by H. G. Davis & Co. as collateral security for the payment of the Gouverneur decree, viz., $5,932.92 for which they hold my note dated June 11, 1875. Witness my hand and seal this 28th day of October, 1876." This, he testified, was intended as a collateral security for his indebtedness to her. The Gouverneur lien has been paid off and discharged. It was allowed as a valid claim against the North Branch Company on the former appeal in this case; and the four hundred dollars, according to Brydon's testimony, have likewise been settled. That Brydon was justly indebted to his wife when he executed this transfer to her does not admit of a doubt. That he was also indebted to Henry G. Davis and Company for large advances made by them to him is equally certain.

As the case now stands, there are three claimants to the fund constituting the dividend on the Brydon stock, namely, the North Branch Company, represented by its minority stockholders; Henry G. Davis and Company and Mrs. Susan V. Brydon—though there is no contest between the latter two; for, whilst they both claim the fund, they do not claim it as against each other, but as against the North Branch Company. If Davis and Company are entitled to the dividend, or if Mrs. Brydon is entitled to it, the claim of the North Branch Company must fall. If they be not entitled to it, the North Branch Company will be, provided Brydon is actually indebted to it as alleged.

So far as the appellants are concerned, it makes no difference whether the dividend on the Brydon stock rightfully belongs to Davis and Company or to Mrs. Brydon. Unless the North Branch Company—the body corporate, not Gemmell and Sinclair, as individual stockholders—has a lien on the dividend, which lien is prior in its equities to the claims of Davis and Company and Mrs. Brydon, the contention of the appellants cannot be sustained. Naturally, therefore, the first question which presents itself is, assuming that Brydon is indebted to the North Branch Company in an amount twice as large as the dividend, what claim or lien has the company on that dividend? There is no lien reserved in the charter of this company (*Act of* 1867, *ch.* 309,) or even in its by-laws, in favor of the corporation upon the *stock* of any shareholder to satisfy or secure a debt due by him to the company. No such lien exists at common law; *Ang. & Ames. Corp.*, secs. 355 & 569; *Cook on Stock and Stockholders*, sec. 521; *The Mass. Iron Co. vs. Hooper*, 7 *Cush.*, 183; and unless created by statute, or by the charter, or, perhaps, in some instances, by a *usage* brought to the knowledge of, and acted on by both parties, it does not exist at all. *Morse on Banks and Banking*, 505. As the company had, and could have had by implication or by operation of law, no lien on Brydon's stock to secure the debt due by him to it, it was in no position to resist or prevent a transfer of that stock to some one else. But the right of a corporation to withhold a dividend from a stockholder who is indebted to it, rests upon an entirely different principle. It is the right of set-off; for the dividend is a simple debt owing from the corporation to the shareholder. As in every other case to which this doctrine of set-off is applicable, the debt, that is, the dividend due by the corporation must be payable by it to the person from whom the obligation to the corporation is demandable. If the stock has passed into the

hands of a third party before the dividend has been declared, the right of set-off is gone; because a dividend declared after a transfer of stock has been made belongs to the assignee, and not to the assignor. Had the stock in question been assigned on the company's books, and had new certificates been issued in the name of Davis and Company or Mrs. Brydon before this dividend was declared, the right of set-off would have been incontestably extinguished. Has it, under the circumstances of this case been preserved?

As between vendor and vendee, or pledgor and pledgee, of stock, a transfer on the books of the company is not essential to perfect an *equitable title* in the vendee or pledgee. *Noble vs. Turner, et al.,* 69 *Md.,* 519; *Baltimore Retort and Fire Brick Co. vs. Mali,* 65 *Md.,* 96; *Cecil National Bank vs. Watsontown Bank,* 105 *U. S.,* 217; *Johnston vs. Laflin,* 103 *U. S.,* 800. This principle is fully recognized by the *Act of* 1886, *ch.* 287, embodied in *sec.* 277, *Art.* 23 *of the Code.* By the assignment and delivery of the certificates the title passed to the pledgee. As between vendor and vendee of shares of stock it is the settled rule that the vendee is entitled to all the dividends on the stock which are declared after the sale of the stock. In other words, dividends belong to the person entitled to the stock when the dividends are declared. *Abercrombie vs. Riddle,* 3 *Md. Ch. Dec.,* 320. Even though the transfer has not been recorded, the transferee has a right to the dividends, as against the transferer. *Cook on Stocks, &c., sec.* 541. A pledgee is protected in the same way as a purchaser of stock, *Ib., sec.* 432, and consequently dividends declared during the continuance of the pledge belong to him, though he is not registered as owner on the corporate books. *Cook, sec.* 468; *Hill vs. Newichawanick Co.,* 8 *Hun,* 459, affirmed in 71 *N. Y.,* 593. If not so registered, and the corporation pays the dividend in good faith and without

notice of the transfer to the nominal owner, the payment would be undoubtedly a good one. But a pledgee who neglects to notify the corporation that he holds the stock in pledge, or to take the proper steps to secure title to the stock in his own name, will not be protected against the lien of the corporation upon the stock to secure the payment of an indebtedness contracted to the company by the pledgor in the meantime, and subsequently to the pledge of the shares. *Cook, sec.* 525. Though Brydon, who was the president of the North Branch Company, knew of the transfer to Davis and Company and to Mrs. Brydon, because he made them; his knowledge thus acqüired was not binding on the company, he not then being engaged in the business of the company, and not acting in his capacity of president. *Winchester and Lemon vs. Balto. & Susq. R. R. Co.*, 4 *Md.*, 231. Now, though all the certificates of stock held by Brydon were delivered to Davis and Company in 1874 "as collateral for certain advances," they were not assigned until November, 1888. They were *then* transferred "as collateral per agreement of this date," and a blank power of attorney was signed authorizing a transfer to be made on the books of the company. From that time Davis and Company became the equitable owners of the stock, and entitled to any dividends thereafter declared thereon unless subsequent to that date Brydon contracted a debt to the company whilst the latter was in ignorance of the assignment. If Brydon became indebted to the company after November 13th, 1888, without the company having notice or knowledge of the assignment to Davis and Company, the latter would not in equity be allowed to claim the dividend in prejudice of the company's right of set-off, because the enforcement of such a claim under those conditions would work a fraud and an injustice upon the company. It is not pretended that Brydon's alleged indebtedness to the North Branch Company arose after

November 13th, 1888.—indeed, it is clear from the records on the former appeals that the last item in the claim against him was not of a later date than 1876.    The company possessing, as we have seen, no lien at all upon the stock, and Davis and Company having acquired the equitable title thereto in November, 1888, and there being no indebtedness contracted by Brydon thereafter to the North Branch Company, the dividend when declared in 1891 was due and payable to Davis and Company who then held the stock.    The North Branch Company, Gemmell and Sinclair, and every party in interest being, as we shall show in a moment, fully apprised of the claim of Davis before the dividend was declared, that dividend can not be retained by the corporation to liquidate Brydon's debt to it.    That debt was not contracted on the faith of this dividend.    The failure to transfer the stock on the books of the company placed the company in no worse position as to Brydon's antecedent indebtedness to it than if the stock had been regularly and formally assigned on the transfer books.    The omission to notify Gemmell and Sinclair or the corporation, earlier than they were informed, of the fact that Davis held the shares as collateral, misled no one, and certainly did not induce the corporation to trust or credit Brydon for a single dollar.    What equity has the company to withhold the dividend confessedly payable to the pledgee of the shares, and not only to withhold it, but actually to apply it in payment of another person's indebtedness?

Whilst the proceeding is ostensibly in behalf of the North Branch Company, the real object of Gemmell and Sinclair is to have the dividend distributed to themselves. Both they and the North Branch Company are parties to this cause, and have been from the beginning.    During the progress of the case and long before the appeal in 73 *Md.* was taken, it appeared in the proceedings that Bry-

don had assigned his stock to Davis and Company for
their indemnity, and all the parties to the cause either
actually knew or were chargeable with notice of this fact
thus disclosed by the record. Is it at all in consonance
with the principles which govern Courts of equity that
Gemmell and Sinclair should be permitted, in the name
of the corporation, to take possession of this fund for
themselves when they and every party to the cause knew
before the dividend was declared that Davis and Com-
pany claimed the shares, and every incident of them, by
assignment? Gemmell and Sinclair are seeking to gain
an advantage for themselves personally by reason of the
failure of Davis to have the assignment regularly
entered on the books of the corporation; though had
such entry been made, they would have had no superior
information on this subject than that which they did
possess when, on September 19th, 1891, they filed their
petition, claiming the fund for the company. To decree
that dividend to the North Branch Company is simply
to decree it to Gemmell and Sinclair in spite of their
knowledge that Davis and Company hold a transfer,
dated more than two years before the dividend was de-
clared, entitling them to that dividend. Whilst the
North Branch Company was not a going concern it cer-
tainly was a party to the proceedings in this cause, and,
like every other party thereto, had notice of everything
disclosed by the record; and one of the things which the
record did disclose long before the dividend was declared
was the assignment of Brydon's stock to Davis and Com-
pany. Had the dividend been declared before the
assignment was made, the question would be entirely
different. Then the dividend would have been due to
Brydon. Now it is not. The pledgee is entitled to
demand it. As against him the company has no supe-
rior equities.

But it has been insisted that Davis and Company only
held the stock as collateral security for the Gouverneur

lien and a debt of four hundred dollars.    This Brydon
has testified to.     The written  memorandum  made when
the certificates were delivered to Davis in 1874 does not
restrict the security to those two debts, nor does the for-
mal  and  final  assignment made  in  November,  1888.
These papers fail to disclose that the  stock was  pledged
for those particular items of indebtedness, and none other.
The  probabilities  are  all  against  such  a  contention.
Davis and Company had made large advances to Brydon
for various  purposes  before November 13th,  1888,  and
it is highly improbable when they procured  the  assign-
ment that they took it as  collateral for only a portion of
the debts due  to  them  by  Brydon.    There  is  not suffi-
cient evidence in the record to justify this Court in nar-
rowing the broad  terms of the written assignment and
in confining that  assignment to  the  two  claims  men-
tioned by Brydon.    The transfer made by Brydon to his
wife speaks. of  the  previous  assignment  to  Davis  and
Company as collateral for the Gouverneur claim, but that
is merely  Brydon's *ex parte* declaration and can not have
the effect of impairing the rights of Davis and Company
under the comprehensive terms of the  transfer made to
them.

In this view of the case it becomes unnecessary to in-
quire as to Mrs. Susan  V. Brydon's claim  to the divi-
dend, or into the  question  of  Brydon's  indebtedness to
the North Branch Company.    The only  appeal before
us is that of Gemmell and Sinclair.    As the North Branch
Company, which they represent, has  shown  no reason
for a reversal of the order appealed from, that order will
be affirmed, without considering whether the claims of
Davis and Mrs. Brydon conflict with each other.

*Order affirmed, with costs.*

(Decided 16th March, 1892.)