## MAXWELL v. NATIONAL BANK OF GREENVILLE.

BANKS—STOCK—CORPORATIONS.—The pledgee of bank stock with power of attorney in blank to transfer on books of bank should collect dividends and account to pledgor, but the assignee of such pledgee of the stock as collateral is not liable to pledgor for dividends collected by pledgee after assignment.

Before KLUGH, J., Greenville, April, 1904. Reversed.

Action by John H. Maxwell against National Bank of Greenville. From judgment for plaintiff, defendant appeals. The following is the agreed statement of facts upon which the case was tried:

"This action was instituted in the Court of Common Pleas for Greenville County, on February 18th, 1904, for $280 and interest alleged to be due by defendant to plaintiff under the following facts, which are admitted:

"On August 3d, 1893, the plaintiff, John H. Maxwell, being the owner of a certificate of ten shares of stock in the American Bank, endorsed and assigned it in blank and delivered it to one Lafayette Hogg to secure a note of $1,000, given at the time to Hogg. In June, 1894, the plaintiff, through one R. C. Foster, acting as agent for his wife, Mary B. Foster, borrowed from Mary B. Foster $1,000, with which to pay off the Hogg note, and gave his note therefor. He delivered this note to R. C. Foster, with instructions to pay off the Hogg note and take up the collateral, the bank stock. R. C. Foster did this and returned to plaintiff the Hogg note, but not the collateral. There was no agreement that the bank stock should be held by Mary B. Foster as collateral to the note given to her, but Maxwell was under the impression that she had the right to hold it.

"In December, 1894, R. C. Foster applied to the National Bank of Greenville for a loan of $800, and offered as collateral to his note for that amount the said bank stock. He exhibited to the bank the said certificate of stock, having the same in his possession, with the signature of the plaintiff on the back thereof, under the blank power of attorney printed thereon. He told the bank that he was the owner of the stock. W. E. Beattie, the cashier of the bank, suggested to R. C. Foster that he have the stock transferred on the books of the bank to him. Foster replied that he had bought the stock from Dr. Maxwell, but with the promise or understanding that it should stand in his name, so as to give him an opportunity of redeeming it. The negotiation was then completed, Foster giving the bank his note for $800, secured by the stock as collateral.

"In January, 1895, plaintiff learned that Foster had hypo-thecated his stock with defendant bank. He made no complaint to the bank about it until September, 1900. Up to that time he had received regularly his dividends, and testified that he was under the belief that the stock could only be transferred, so as to divest him of title by himself endorsing the transfer on the books of the bank.

"In January, 1896, the plaintiff paid his note to Mary B. Foster. At this time he made no demand upon either Foster or the defendant for his stock. That he immediately thereafter left for a trip to Canada and other points, being away a month or two.

"On June 4th, 1900, Foster had the stock formally transferred on the books of the American Bank to himself, assigned it in blank and left it with the defendant as collateral to the $800 note given in December, 1894. Said transfer was made upon written order by W. E. Beattie, cashier to American Bank.

"From the 3d August, 1893, to the 4th June, 1900, the plaintiff regularly received the dividends (three and one-half per cent., semi-annually, January 1st and July 1st), declared upon this stock by the American Bank. The dividend for July 1st, 1900, January and July, 1901, January and July, 1902, January and July, 1903, were received by R. C. Foster and applied to his own uses, not to the note at the National Bank. The dividend for January 1st, 1904, is still with the American Bank. During this period the Foster note was unpaid, except the interest, which was kept down.

"In September, 1900, the plaintiff brought suit against the National Bank of Greenville, R. C. Foster and Mary B. Foster, for the recovery of the certificate of stock. This suit resulted in a judgment in favor of the plaintiff, and the stock has been delivered to him. See 67 S. C., 377.

"On February 18th, 1904, the plaintiff brought this action against the National Bank to recover the dividends of July

1st, 1900, January and July, 1901, January and July, 1902, January and July, 1903, and January, 1904, eight dividends, $35 each, $280, with interest respectively upon each at seven per cent. The trial was had before Judge J. C. Klugh, at March term, 1904, without a jury. He rendered judgment in favor of the plaintiff for $284.06, which has been duly entered. The stipulations and admissions stated in the decree are correct.

"The authority to Foster to pay off the Hogg note with money borrowed from Mrs. Foster involved and carried with it the authority on the part of Foster to receive possession of the Hogg note and also the certificate of stock."

*Messrs. M. F. Ansel* and *Cothran, Dean & Cothran,* for appellant. *Mr. Ansel* cites: 1 Cook on Stock, secs. 465, 538; 2 Am. & Eng. R. Cas., 607; 130 U. S., 416; 56 Fed. R., 369; 31 Cal., 630; 128 Cal., 208.

*Messrs. McCullough & McSwain,* contra, cite: 22 Ency., 907; 9 Ency., 720; 99 Am. Dec., 761; Clark on Corp., 349; 90 Am. Dec., 72.

February 20, 1905. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The agreed statement of facts is found above. It was held in the former case of *Maxwell* v. *Foster,* 67 S. C., 377, that the defendant, National Bank of Greenville, received the certificate of stock from Foster with knowledge of facts, which should have put it on inquiry as to the plaintiff (Maxwell's) rights, and that the bank took no higher title thereto than Foster had. Foster held the stock as the plaintiff's trustee, the bank was chargeable with notice of the trust and took subject to it. Therefore, if the defendant bank had itself collected dividends, as charged in the complaint, it would have to account to the plaintiff for the dividends just as it was held liable to account for the stock. The defendant, however, did not collect the dividends for which the plaintiff sues, but, on the contrary,

they were collected by Foster and retained by him. The inquiry, therefore, is narrowed down to the question whether the defendant owed any duty to plaintiff to collect the dividends and thus prevent Foster from receiving them.

By delivery of the certificate to Foster, with his signature to the blank assignment and power of attorney on the back of it, the plaintiff made Foster his agent or trustee, and empowered him to collect the dividends. It is true, Foster took the certificate subject to the plaintiff's right to require him to account for the stock and the dividends; and a stranger, like the bank, with notice, could not take the stock or dividends free from the trust; but no one could annul the assignment or revoke the trust except the plaintiff himself. It was not the duty of the defendant to prevent the exercise of a right by Foster which the plaintiff had seen fit to confer upon him. The actual entry of the transfer to Foster on the books of the American Bank, which was made at defendant's instance, and the issue of new stock in Foster's name, contributed nothing to his power or authority to receive the dividends, for that had already been conferred by the plaintiff's assignment and power of attorney. It said in 22 A. & E. Ency. Law, 907 : "Where corporate stock is pledged, and there is a delivery of the stock with a power of attorney in blank to transfer on the books, and an assignment in blank on the back of the certificate, the pledgee has the right to receive from the corporation any dividends accruing while he holds the stock. It is not only the right but the duty of the pledgee of the stock to collect such dividends; and the fact that no transfer has been made on the books of the company is immaterial." See also 2 Thompson on Corp., sec. 2180.

The defendant bank was not the pledgee of the plaintiff, but, on the contrary, plaintiff recovered the stock on the ground that it had committed a wrong against him in taking the stock from Foster, to whom plaintiff had confided it. Certainly it is not for the plaintiff to say the bank should

have committed a further wrong by collecting dividends he had by his endorsement of the certificate authorized Foster alone to collect. In addition to this, it appears from the answer of Foster in the former suit that he claimed a right to hold the stock as collateral, and with this, as we have seen, would have gone the right to collect the dividends. The defendant not only owed no duty to the plaintiff to adjust the dispute between him and Foster as to the right to receive the dividends, but any attempt by it to do so would have been officious. On the other hand, when the plaintiff wished to revoke the authority he had given Foster, he should have given notice to the American Bank not to pay dividends to him. The plaintiff's loss is due to his own laches in not giving such notice or taking some steps adequate to stop payment of dividends to Foster.

The judgment of this Court is, that the judgment of the Circuit Court be reversed.