## RAILROAD CREDIT CORPORATION v. HAWKINS et al.

## FRUIT GROWERS EXPRESS CO. v. SAME.
### Nos. 3954, 3955.

Circuit Court of Appeals, Fourth Circuit.
Jan. 6, 1936.

Richard H. Wilmer, of Washington, D. C. (Daniel Willard, Jr., of Washington, D. C., on the brief), for Railroad Credit Corporation.

Carl H. Richmond, of Washington, D. C. (Gardner L. Boothe, of Alexandria, Va., and W. G. Brantley, Jr., of Washington, D. C., on the brief), for Fruit Growers Express Co.

William B. Rodman, of Norfolk, Va. (Claude M. Bain, of Norfolk, Va., on the brief), for receivers, Norfolk Southern R. Co.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

These are two appeals in a controversy which has arisen in the receivership of the

Norfolk Southern Railroad Company, with respect to the right to certain dividends on 1,572 shares of stock in the Fruit Growers Express Company, owned by the Norfolk Southern Railroad Company, and pledged by that company as collateral security to the Railroad Credit Corporation to secure a loan. There were four of these dividends, two in 1932 and two in 1933. The court below, affirming the report of a special master, held that the first of these, in the amount of $6,288, was owing to the railroad company and might be set off by the express company against its indebtedness to the railroad company; that the second, in the amount of $9,432, was owing, without interest, to the receivers of the railroad company; and that the third and fourth, in the amount of $6,288 and $3,144, respectively, should be paid, without interest, to the credit corporation.

Both the credit corporation and the express company appealed from the decree of the lower court based on the above holdings. The appeal of the credit corporation complains that the court was without jurisdiction to determine the right to the dividends in question, that the credit corporation was entitled to all four of the dividends, and that it was entitled to interest on the dividends from the dates on which they were respectively payable. The appeal of the express company complains that it was not allowed the right of set-off with respect to the second dividend, as well as the first, and that the credit corporation was held entitled to the third and fourth dividends. Another contention which it raises on the appeal, viz., that the court should have passed upon certain claims which it had filed against the receivers before giving the receivers a judgment against it for the second dividend, becomes immaterial in the view which we take as to the right to the second dividend.

The facts out of which the controversy arises are as follows: On March 28, 1932, the railroad company borrowed from the credit corporation the sum of $290,000, being a part of the fund which that corporation had collected under the marshaling and distributing plan of 1931 as approved by the Interstate Commerce Commission in the Fifteen Per Cent Case, Ex Parte No. 103, 178 I.C.C. 539, 179 I.C.C. 215. To secure this loan, the railroad company executed to the credit corporation its promissory note in this amount, payable September 28, 1933, and bearing interest at the rate of 3 per cent. per annum from date payable semiannually, and pledged with it the 1,572 shares of express company stock, the rents and income under a lease to the Virginia Electric & Power Company, and certain other property. The note contained the following language with respect to the pledge, viz.:

"And said railroad company has pledged and does hereby pledge to the Railroad Credit Corporation (its successors or assigns) as security for the payment of this note (both principal and interest), the following property: 1,572 shares Fruit Growers Express Company; 533 shares Atlantic & North Carolina Railroad Company; 10 shares Princess Anne Power Company. The rents and income under a certain lease and contract of joint use of certain properties in Princess Anne and Norfolk Counties, Virginia, from Norfolk Southern Railroad Company to Virginia Electric & Power Company, dated March 1, 1930, pledged and assigned under a certain written contract of assignment of this date, attached hereto and made a part hereof."

The note contained the following language as to the rights of the credit corporation on default:

"Upon the non-payment of the principal of or interest on this note according to its terms, the Railroad Credit Corporation (its successors or assigns) is hereby authorized to collect and enforce or to sell, assign, and deliver the whole or any part of the above-named security, or any substitute therefor, at any public or private sale at any time or times, without demand, advertisement or notice; and upon such sale the Railroad Credit Corporation (its successors or assigns) may become the purchaser of the whole or any part of said security, free from any right of redemption, and no notice of any adjournment of any such sale shall be required. In case of such sale, after deducting all legal or other costs and expenses for collection, sale and delivery, the Railroad Credit Corporation (its successors or assigns) may apply the residue of the proceeds of such collection, sale, or sales, to the payment hereof, and of any or all said liabilities, returning the overplus, if any, to the railroad company."

As further security for this note, the railroad company executed at the same time an assignment of the rent which it was entitled to receive under a lease of property to the Virginia Electric & Power Company. This assignment contained the following condition:

"And upon the further condition, that until railroad company shall make default in the payment of principal or interest or some part of either principal or interest of said loan, Railroad Company shall be entitled to collect and receive the rents, income and yield from said lease of March 1, 1930, and convert the same to its own use, without accountability to Credit Corporation, and until such default as above set out shall have occurred, Credit Corporation shall not be entitled to collect or receive said rents, income or yield."

On April 4, 1932, the credit corporation wrote a letter to the express company giving notice that the stock of the railroad company had been pledged to it as collateral security; and by letter of April 14th the express company acknowledged receipt of the notice.

On June 30, 1932, the first of the dividends here involved was declared by the express company, payable July 15, 1932. The dividend to which the stock pledged with the credit corporation was entitled under this declaration of dividend was not paid to any one, however; and shortly after it became payable, viz., on July 28, 1932, the railroad company was placed in receivership. On application of the receivers, they were authorized to pay and did pay the installment of interest due September 28, 1932, on the note held by the credit corporation, and thereby prevented a default on that note until March 28, 1933. In the meantime, the second dividend was declared on October 4, 1932, payable December 30, 1932. No further interest was paid on the note and default accordingly occurred with respect to the payment of interest due March 28, 1933. The third and fourth dividends on the stock were declared subsequent to that date; and for that reason the special master and the court below held that the credit corporation was entitled to. them, construing the provisions of the note which we have quoted as entitling the pledgee to dividends on the stock pledged only after default.

With respect to the right of set off urged by the express company, the special master found that the railroad company was indebted to the express company at the time of the appointment of the receivers in the sum of $14,894.58, and it is against this indebtedness that the first dividend was set off. An employee in the office of counsel for the express company testified that, shortly after being notified of the pledge of the express company stock by the railroad company to the credit corporation, he made inquiry of some one whom he understood to be treasurer of the credit corporation as to what disposition would be made of dividends on pledged collateral, and was told by him that it was not the intention of the credit corporation at the time to collect dividends until after the default in either principal or interest on the loan, and that, if confirmation of this in writing was desired, he would confirm it. The witness was furnished at the time a blank form of the note used by the credit corporation, but asked no release of dividends on the stock pledged by the railroad company. The treasurer of the credit corporation denied all recollection of any such conversation, and testified that the custom with respect to releasing dividends was to consider each case on its own merits where application for release of dividends was made. There is no evidence that any credit was extended the railroad company by the express company in reliance upon the statement as to dividends, or that the express company paid dividends to the railroad company or to any one else in reliance upon such statement. On the contrary, it is admitted that none of the dividends in question has as yet been paid to any one, although since November 9, 1932, the credit corporation has been demanding that they be paid to it.

On October 26, 1932, both the credit corporation and the express company filed claims with the receivers of the railroad company. The claim of the credit corporation, in addition to setting forth the amount of its claim and the collateral by which it was secured, contained the following statement: "Claim is herewith asserted, as pledgee, to all increases of the pledged property including dividends paid and to be paid, directly or indirectly, to said defendant and/or the receivers." The claim of the express company asked a finding by the court with respect to dividends on the pledged stock in the following note appearing on its proof of claim: "Note.— On June 30, 1932, a dividend was declared upon the capital stock of Fruit Growers Express Company, payable July 15, 1932, to stockholders of record July 1, 1932. Norfolk Southern Railroad Company was the holder of 1,572 shares of said stock of record July 1, 1932, and the dividend thereon amounts to $6,288.00. It is understood that this stock was on March 28, 1932, pledged to the Railroad Credit Cor-

poration to secure a loan of $290,000 to the Norfolk Southern, and that said stock still remains so pledged. If the Norfolk Southern is entitled to the dividend upon said stock our claim against it will be correspondingly reduced; and, if not so entitled our claim against it remains as herewith filed. We ask a finding of facts by the court and a ruling that the dividend is a legal set-off to our claim against the Norfolk Southern Railroad Company." While this note referred to the first dividend only, which was the only one which had then been declared, subsequent dividends were reported to the receivers as declared and the express company made the same claim with respect to them as it made with respect to the first dividend. (See record 148.)

While the case was pending before the special master, the receivers, with the approval of the court below, agreed with the credit corporation on a settlement of the matters in controversy, reserving, however, the questions as to the right to the dividends in controversy and the jurisdiction of the court to determine that matter, the reservation as to the question of dividends being in the following language: "The question of the right, and the party ultimately entitled to the dividends heretofore declared on said stock of the Fruit Growers Express Company, as set out in said application, is expressly left open to be determined by proper judicial proceedings, it being the intent of the settlement and of this order that if the Railroad Credit Corporation, as pledgee, at the several times said dividends were payable, was entitled at law or in equity, under the pledge, to receive and hold such dividends, or any part thereof, it shall receive and retain the same as an additional payment under the settlement; on the other hand, if it was not so entitled to receive and hold any such dividends the settlement will be complete without them."

Upon these facts, the following questions arise for our determination: (1) Was there jurisdiction in the court below to determine the rights of the parties as to the dividends in controversy? (2) Is the credit corporation, as pledgee of the stock, entitled to dividends declared and payable thereon prior to default by the railroad company in making payments under the note for which the stock was pledged? (3) If so, is the express company entitled to offset against any of the dividends on the stock the amount due it by the pledgor, the railroad company? And (4) is the express company chargeable with interest on the dividends for which it is liable to the credit corporation? We shall consider these questions in the order named.

## 1. *The Question of Jurisdiction.*

■ Little need be said as to the jurisdiction of the court below to determine the rights of the parties with respect to the dividends in controversy. It was necessary that the question which had arisen with respect thereto be settled in passing upon the claim of the credit corporation, and that corporation, in making its claim, expressly covered dividends "paid and to be paid" on the pledged stock. The express company, in its claim, admitted its liability for the dividends, but expressly asserted the right to set off its account as filed against dividends for which it was liable, and asked a finding of facts and ruling by the court with respect to the matter. Whether the proceeding to determine the rights in the dividends be regarded as in rem, as determining rights with respect to an admitted debt of a party before the court, or in personam, as determining the rights of the claimants and receivers against each other, there can be no question as to the court's having jurisdiction both of the subject-matter and of the parties under the claims as filed with it. Elkins v. First Nat. Bank (C.C.A.4th) 43 F. (2d), 777, 779; Schwartz v. Randolph (C. C.A.4th) 72 F.(2d) 892, 893, 96 A.L.R. 480; Alexander v. Hillman (C.C.A.4th) 75 F.(2d) 451; Id. (U.S.) 56 S.Ct. 204, 209, 80 L.Ed. ——. As said by the Supreme Court in the case last cited:

"Respondents appropriately presented their claims and became entitled to adjudication without petition for intervention, any formal pleading, or commencement of suit. Unquestionably, they submitted themselves to the court's jurisdiction in respect of all defenses that might be made by the receivers and of all objections that other claimants might interpose to the validity, amounts, or priorities of their claims. And they put themselves in position, should their interest warrant, to challenge the receivers' acts and the demands of others claiming as creditors."

■ And, of course, the jurisdiction of the court below was in no wise affected by reason of the fact that the credit company, after the filing of its claim in that court, instituted a suit against the express company in the District of Columbia for the.

recovery of the dividends in controversy; and the appellate court of the District very properly directed that proceedings in the suit before it be stayed pending the final disposition of the questions pending before the court below. Railroad Credit Corporation v. Fruit Growers' Express Company, 63 App.D.C. 208, 71 F.(2d) 218. The suit in the District was strictly in personam and was instituted after claim had been filed and jurisdiction acquired by the court below with respect to the same subject-matter; and, even if the proceedings in the court below were in personam, as intimated by the Court of Appeals of the District, it was proper under the circumstances for the latter court to stay proceedings in the suit last instituted until the issue there involved could be determined by the court which had first acquired jurisdiction to determine it. As said by this court, speaking through Judge Soper, in Schwartz v. Randolph, supra, a case in which suit was commenced in New York, after claim had been filed with a receiver in Maryland:

"The filing of the claim in Maryland was itself a submission of the matter to the determination of the court, and it was none the less significant that it was done in response to a notice to creditors necessarily given by the court in the usual manner to expedite the settlement of the estate. We have then in effect the filing of two suits in personam, involving the same subject-matter, in separate jurisdictions foreign to one another. The power of the courts in such a contingency is clear. The mere pendency of the action in one court prior to the rendering of judgment does not oust the jurisdiction of the other. [Citing cases.] Circumstances may indeed arise in which the court of one jurisdiction, in the exercise of its discretion, may stay its hand pending the action of the court in the other, and the abuse of this discretion in hearing or refusing to hear a case may be the proper subject of an appeal."

## 2. The Right to the Dividends.

We think it clear that the credit corporation was entitled to the first and second dividends on the stock in controversy, as well as to the third and fourth. Under a form note carefully prepared by the credit corporation for use throughout the United States, the stock was pledged to it without any reservation of dividends on the part of the pledgor; and the law is well settled in such case that the dividends belong to the pledgee. The rule is thus stated in Fletcher's Cyclopedia of Corporations, vol. 6, § 3704: "In the absence of agreement to the contrary, a pledge of shares of stock as collateral security carries with it, as an incident of the pledgee's special ownership, the right to receive dividends afterwards declared, to be applied on the debt, or held in trust for the pledgor. * * * If the transfer has been registered on the books of the company, or although not so registered, if the corporation has notice thereof, it will be liable to the pledgee if it pays such dividends to the pledgor. As between the parties the failure to register the transfer on the books of the corporation does not affect the right of the pledgee to dividends." And, as supporting this statement of the rule, see National Bank of Commerce v. Equitable Trust Co. (C.C.A.8th) 227 F. 526; Detroit Trust Co. v. First National Bank-Detroit (D.C.) 7 F.Supp. 117; Whetsel v. Forgey, 323 Mo. 681, 20 S.W.(2d) 523, 67 A.L.R. 476; Gemmell v. Davis, 75 Md. 546, 23 A. 1032, 32 Am.St.Rep. 412; Guarantee Co. v. East Rome Town Co., 96 Ga. 511, 23 S.E. 503, 51 Am.St.Rep. 150; Maxwell v. National Bank of Greenville, 70 S.C. 532, 50 S.E. 195, 3 Ann.Cas. 723; Meredith Village Savings Bank v. Marshall, 68 N.H. 417, 44 A. 526; 7 R.C.L. 293; 14 C.J. 732; and notes in 67 A.L.R. 485, and 3 Ann.Cas. 725, and cases there cited.

And we do not think, as did the court below, that there is anything in the paragraph of the note which we have quoted, relating to rights upon default, which in any way limits the rights of the pledgee with respect to dividends. The purpose of that paragraph was clearly to enlarge, not to restrict, the rights of the pledgee. It dealt with the rights of the pledgee to realize on the security pledged in case of default, not with the nature of the pledge or limitations thereon. It was evidently intended to make clear (1) that, upon default, the pledgee should have the right either to sell or to collect (or otherwise enforce) collateral pledged to secure the note, which was a form note intended for general use by the credit corporation; (2) that pledgee should have this right as well where there was a default in the payment of interest; as where there was default in payment of principal; and (3) that pledgee should have the right to purchase at its own sale if it should exercise the power

given it to sell the collateral pledged. The suggestion that there was no right in the pledgee to collect dividends until after default because of the use of the word "collect" in this default and foreclosure paragraph would lead, if adopted, to the absurd conclusion that, in the case of coupon bonds pledged to secure a note of this character, the credit corporation would be without power to collect either bonds or coupons upon maturity unless there were a default under the note for the payment of which they had been pledged.

And we are not impressed with the argument that because the credit corporation was organized to assist weak and defaulting railroads, its contracts should not be interpreted in the same way as the contracts of any other corporation. It was not an eleemosynary institution, but a private corporation doing business on business principles. It was requiring security for money loaned; and the corporations with which it was dealing were represented by counsel learned in the law and well versed in the meaning of legal language and the legal effect of a pledge of securities. If it had been intended that, until default, the debtor roads and not the lender should be entitled to the dividends on stock pledged as collateral, this would have been set forth in connection with the pledge, not left to be inferred, by attenuated reasoning, from language contained in the default and foreclosure clause. In the matter of the assignment of the rentals under the Virginia Electric & Power Company lease, it was intended that, until default under the note, these rentals should continue to go to the railroad company; and this was clearly set forth. If it had been intended that notwithstanding the pledge, dividends should be paid to the railroad company until default, this too should, and we think would, have been clearly set forth in the note. In the absence of such provision, it is not for the courts to strip the lender of security to which he is clearly entitled under the law as an incident of the pledge.

### 3. The Question of Set-Off.

■ As the dividends in controversy belong to the credit corporation and not to the railroad company, there would seem to be little difficulty about the question of set-off. A corporation declaring a dividend is entitled, ordinarily, to set off a dividend owing to a stockholder against a debt due it by the stockholder at the time the dividend is declared; but, as we have seen, the dividends here were not owing to the railroad company, but to the credit corporation, as the pledgee of the stock. The stock had been pledged and the express company notified of the pledge before any of the dividends were declared. Under such circumstances, the law is well settled that the dividends may not be set off against debts due by the pledgor. 7 R.C.L. 295; Sargent v. Franklin Ins. Co., 8 Pick. (Mass.) 90, 19 Am.Dec. 306; Gemmell v. Davis, 75 Md. 546, 23 A. 1032, 1034, 32 Am.St.Rep. 412. The rule is thus well stated by Judge McSherry in the case last cited:

"As in every other case to which this doctrine of set-off is applicable, the debt—that is, the dividend—due by the corporation must be payable by it to the person from whom the obligation to the corporation is demandable. If the stock has passed into the hands of a third party before the dividend has been declared, the right of set-off is gone, because a dividend declared after a transfer of stock has been made belongs to the assignee, and not the assignor. * * * As between vendor and vendee or pledgor and pledgee of stock, a transfer on the books of the company is not essential to perfect an equitable title in the vendee or pledgee. Noble v. Turner, 69 Md. 519, 16 A. 124; Baltimore, etc., Brick Co. v. Mali, 65 Md. [93], 96, 3 A. 286 [57 Am.Rep. 304]; Cecil Nat. Bank v. Watsontown Bank, 105 U.S. 217 [26 L. Ed. 1039]; Johnston v. Laflin, 103 U.S. 800 [26 L.Ed. 532]. * * * As between vendor and vendee of shares of stock it is the settled rule that the vendee is entitled to all the dividends on the stock which are declared after the sale of the stock. In other words, dividends belong to the person entitled to the stock when the dividends are declared. Abercrombie v. Riddle, 3 Md.Ch. 320. Even though the transfer has not been recorded, the transferee has a right to the dividends, as against the transferer. Cook, Stocks, § 541. A pledgee is protected in the same way as a purchaser of stock (Id. § 432), and consequently dividends declared during the continuance of the pledge belong to him, though he is not registered as owner on the corporate books (Id. § 468). Hill v. Newichawanick Co., 8 Hun [N.Y.] 459, affirmed in 71 N.Y. 593."

■ And we do not think that the case is affected by the inquiry which the express

company contends was made by a member of its legal staff as to the intention of the credit corporation with respect to dividends, and the response to such inquiry that it was not the intention of the credit corporation at the time to collect dividends in the absence of default. It does not appear who made the statement or that it was anything more than a statement as to policy which was subject to change at any time. If it had been shown that it was made by the treasurer or other responsible officer of the corporation, and that, in reliance thereon, credit had been extended to the express company by the railroad company or dividends had been paid to it, a different question would be presented. But the record does not show that any credit was extended to the railroad company because of the statement and certainly no dividends on the stock in controversy were paid to it or to anyone else. There is no basis, therefore, for the application of the doctrine of estoppel; and we do not think that the credit corporation should be held to have waived its rights to the dividends because of a general statement of some unidentified person in its office with respect to the general policy of the corporation, especially as the express company did not attach sufficient importance to the statement to request that it be put in writing, or ask that a waiver be given with respect to the dividends here involved, as was customary in cases where the corporation was willing to waive its right to dividends. "The expression of an intention to do a thing," as said in Stewart v. Reckless, 24 N.J.Law, 427, 430, "is not a promise to do it. An intention is but the purpose a man forms in his own mind; a promise is an express undertaking, or agreement to carry the purpose into effect."

We do not understand that the express company grounds any right upon the theory of waiver or estoppel, but relies upon the statement in question as an interpretation of the contract by an official of the credit corporation; but as the contract is in our opinion free of ambiguity, it cannot be considered for that purpose.

4. *The Question of Interest.*

There can be no question, we think, but that the credit corporation is entitled to recover interest on the dividends from the time that they were payable, except that on the first dividend interest should run only from the date of demand, which was November 9, 1932. For the reasons heretofore stated, the credit corporation was entitled to collect the dividends. It notified the express company of its rights and demanded payment which was refused. The express company not only has failed to pay the dividends to the credit corporation, as it should have done, but also has been asserting the right to set them off against indebtedness owing to it by the railroad company. While the receivers of the railroad have been claiming the dividends, their claim was not well founded, as we have seen; and the express company has at no time offered to pay the money into court to abide its determination. On the contrary, it has retained the money which it should have paid the credit corporation and has had the use of it for all of this time, whereas the credit corporation, which was entitled to the money, has been deprived of the use of it. Under such circumstances, we see no reason why the express company should not be chargeable with interest on the first dividend from November 9, 1932, and on the others from the date on which they were payable, at the rate of 6 per cent. per annum, the rate prevailing both in the state of the forum and in the District of Columbia where the money was payable.

It is well settled that where a stockholder demands payment of a dividend, and it is refused, he is entitled to recover interest from the time of such demand and refusal. Keppel v. Petersburg R. Co., 14 Fed.Cas. page 357, at page 372, No. 7,722 (Per Circuit Justice Chase); 14 C.J. 826; Fletcher's Cyclopedia of Corporations, vol. 6, p. 6139, and cases there cited. And we see no reason why any different rule should be applied in the case of a pledgee of stock from whom dividends have been wrongfully withheld. Interest is awarded in any case where it is not covered by express contract, because such award is necessary to place the injured party in the position which he would have occupied if the party in default had fulfilled his duty in the premises. As said by the Supreme Court in Miller v. Robertson, 266 U.S. 243, 257, 45 S.Ct. 73, 78, 69 L.Ed. 265:

"Compensation is a fundamental principle of damages, whether the action is in contract or in tort. Wicker v. Hoppock, 6 Wall. 94, 99, 18 L.Ed. 752. One who fails to perform his contract is justly bound to make good all damages that accrue naturally from the breach; and the other party is entitled to be put in as good

a position pecuniarily as he would have been by performance of the contract. Curtis v. Innerarity, 6 How. 146, 154, 12 L. Ed. 380. One who has had the use of money owing to another justly may be required to pay interest from the time the payment should have been made. Both in law and in equity, interest is allowed on money due. Spalding v. Mason, 161 U.S. 375, 396, 16 S.Ct. 592, 40 L.Ed. 738."

For cases illustrating how the principle of awarding interest to afford adequate compensation for the withholding of money justly due has been applied under varying circumstances, see United States v. Creek Nation, 295 U.S. 103, 111, 55 S.Ct. 681, 79 L.Ed. 1331; Seaboard Air Line Ry. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 67 L.Ed. 664; Brame v. Keystone Credit Corporation (C.C.A.4th) 76 F.(2d) 328, 331; Standard Accident Ins. Co. v. Simpson (C.C.A.4th) 64 F.(2d) 583, 589; New Amsterdam Casualty Co. v. United States Shipping Board, etc. (C.C. A.4th) 16 F.(2d) 847, 852. And that the principle of awarding interest by way of affording adequate compensation where there has been default in the payment of money due is one of great antiquity, and recognized by the Roman Law. See Buckland Roman Law (2d Ed.) 551.

 The point is made that under the agreement of settlement between the credit corporation and the receivers interest on the dividends was not left open to adjudication, but the dividends only. We do not so interpret the agreement, the purpose of which was to withhold from the settlement the question which had been raised as to the right to the dividends, and which provided that, if it should be determined in the litigation that the credit corporation was entitled to the dividends, that corporation should have the recovery in addition to what had been received by it under the settlement. As pointed out by the Supreme Court in Stewart v. Barnes, 153 U. S. 456, at page 462, 14 S.Ct. 849, 38 L.Ed. 781, the right to recover interest by way of damages is not an independent cause of action, but is a right incidental to the right to recover the principal debt; and, as we hold the credit corporation entitled to recover the principal amount of the dividends wrongfully withheld from it, we think that it is entitled to interest by way of damages as' an incident of the relief granted. We do not think that the settlement between the credit corporation and

the receivers was intended to affect in any way the right to recover interest as an incident to the recovery of the dividends; and certainly the express company ought not be allowed to avoid its liability because of an agreement between the credit corporation and the receivers unless this was clearly contemplated by the agreement.

For the reasons stated, the decree of the court below will be reversed on the credit corporation's appeal in so far as it relates to the first and second dividends and the awarding of interest. The questions raised by the express company's appeal become immaterial, except those relating to the awarding of the third and fourth dividends to the credit corporation, as to which the judgment is affirmed. On both appeals the cause is remanded with directions that decree be entered for the credit corporation for all four dividends, with interest on each from the date payable at the rate of 6 per cent. per annum, except that interest shall run on the first only from November 9, 1932. On the credit corporation's appeal the cost will be taxed half against the receivers and half against the express company. On the express company's appeal the costs will be taxed against it as appellant.

No. 3954, reversed in part and remanded with directions.

No. 3955, affirmed in part and remanded with directions.