AMERICAN EMPLOYERS' INS. CO. et al.
v. DALLAS JOINT STOCK LAND
BANK et al.

FERGUSON v. AMERICAN EMPLOYERS'
INS. CO.

Nos. 13357, 13361.

Court of Civil Appeals of Texas. Dallas.

Feb. 19, 1943.

Rehearing Denied April 2, 1943.

548

W. B. Handley, of Dallas, for American Employers' Ins. Co., et al.

Chrestman, Brundidge, Fountain, Elliott & Bateman, of Dallas, for Dallas Joint Stock Land Bank et al.

Hugh W. Ferguson, Jr., of Dallas, for H. W. Ferguson.

YOUNG, Justice.

Dallas Joint Stock Land Bank, under terms of a subsisting fidelity bond covering the acts and conduct of H. W. Ferguson, its President, sued appellant for an amount of money or "secret profits," alleged to be the property of the Land Bank, but appropriated by said official; and upon trial, recovered judgment against the Insurance Company for $7,406.48, with interest at 6% from November 16, 1939 (date of proof of loss). After pleading certain affirmative defenses to the suit of the · Land Bank, appellant Insurance Company impleaded H. W. Ferguson, Mrs. Anne G. Jones (his former wife) and one C. R. Craddock, as parties to plaintiff's action; claiming a right of reimbursement from last-named persons in event of liability on the bond. Accordingly, the Insurance Company recovered judgment over against Ferguson in like amount ($8,491.50 at time of trial); also an equitable lien was established on 736.8 acres of land in Denton County, the property of Mrs. Jones, upon a finding by the court that aforesaid secret profits, to extent of $6,581.35, had been used in ac-

quiring said lands while cross-defendants (Ferguson and Mrs. Jones) were husband and wife.

All parties have excepted to various parts of the judgment. The appeal of H. W. Ferguson, though presented separately, will be joined in one disposition; and here, we note that cross-defendant Mrs. Anne G. Jones has filed no brief.

The following background of facts to the entire litigation should be stated: H. W. Ferguson was President of Dallas Joint Stock Land Bank on all material dates prior to September 28, 1939, at which time he resigned. Since 1936, a fidelity bond had been held by the Land Bank, covering the official acts of its President, with conditions of reimbursement to the assured for any financial loss that might be sustained directly or in collusion with others "through failures * * * faithfully to execute, perform and discharge all the duties of his office and position, or faithfully to account for and/or deliver and pay over to the employer, or person entitled thereto, any and all money, notes, bonds, debentures, securities, documents, records or other properties of any and every kind and character, which belong to the employer, or for which it may be responsible, which may come into his possession or custody, or for which he may be accountable by virtue of his office or position." The secret profits, which the trial court held to be within the terms of said bond, were funds retained by Ferguson and arising out of realty sales, oil and gas leases and rental transactions in South Texas, between May 12, 1937, and March 3, 1938.

In a nonjury trial, the Land Bank had alleged, and the evidence established, that the losses just mentioned were not discovered until after resignation of Ferguson as President, or about September 30, 1939, when it gave telegraphic notice thereof to appellant, furnished due proof of loss on November 16, 1939; and on January 31, 1940, was notified by the Insurance Company that liability was denied.

For several years prior to February 2, 1940, Mr. Ferguson had been the registered owner of 1,855 shares of the Land Bank's capital stock, but on that day, 928 shares were transferred on the books of the Bank to A. W. Brown, reducing Ferguson's shares to 927. As of June 1, 1940, the book value of Land Bank capital stock was $200 per share; the market value around $160 per share. Likewise, for a

considerable time prior to the year 1940, Ferguson had engaged in extensive financial transactions with Wm. Morris, of Dallas, also the Mercantile National Bank; and on June 1, 1940, his obligations to these two creditors stood generally as follows: To the Mercantile Bank, $101,500, secured by first lien on section 19 of 640 acres in San Patricio County, and pledge of the aforesaid 927 shares of stock; to Mr. Morris, a principal debt of approximately $60,000, secured by second lien on the properties just described; also first pledgee's lien on 49% of the capital stock of Santa Cruz Farms, Inc., a 9,400-acre South Texas company (competent testimony valuing the Santa Cruz pledged stock at $60,000 and Section 19 at $80 per acre).

The total indebtedness above is shown to be $161,500, secured by collateral valued at $259,000.

During all this time, the Land Bank was in process of voluntary liquidation and fully cognizant of above Ferguson indebtedness, with special reference to the 927 shares of his stock pledged with such creditors as security. On May 21, 1940, the Land Bank declared a liquidating dividend of $90 per share, payable June 1, notifying its stockholders thereof, including Mercantile National Bank; one of its officials sending to the Land Bank the pledged 927 shares for dividend credit, requesting check for the amount ($83,430) to be mailed such pledgee. The check in question was thereafter made to H. W. Ferguson, payee, who promptly endorsed it to the Mercantile National Bank and received credit on the particular debt. On August 15, 1940, the 927 shares were sold to A. W. Brown at $76 per share, the proceeds being applied to payment of the Mercantile Bank note in full; also to reduction of the Morris loan to some $12,000. This balance was fully paid later in the year and all liens released by these creditors.

The material facts of this case are not controverted and, predicated thereon, judgment was rendered as already described, viz.: That the secret profits retained by Ferguson, but due the Land Bank, aggregated $6,581.35, and by Ferguson and Craddock, $825.13, for which the Insurance Company was liable under its policy, with interest at 6% from November 16, 1939 (amounting to $1,085.02), or a total rendition at time of trial of $8,491.50, bearing legal interest at 6% per annum until paid.

Judgment was also rendered for the Insurance Company against Ferguson and Craddock for $946.28 and against Ferguson for $7,545.22, the two sums being the same as the Land Bank's recovery against insurer. Further judgment findings were that these secret profits ($6,581.35) had been used in the purchase and improvement of the 736.8 acres of Denton County land, title to which was in cross-defendant Anne G. Jones (formerly Ferguson) who "holds said lands in trust for American Employers' Insurance Company as subrogee of Dallas Joint Stock Land Bank to the extent of said sum, with interest, and it is entitled to and holds an equitable lien against said lands to the extent of said sum with interest." The equitable lien so established was to secure appellant in the payment of $7,545.22 (representing said sum of $6,581.35 with interest from November 16, 1939), together with 6% interest thereon from April 25, 1942, the date of trial; the decree specially providing, however, that such equitable lien be not foreclosed until full payment and satisfaction of the primary judgment in favor of the Land Bank against defendant insurer. The latter, as cross-plaintiff, sought personal judgment against Mrs. Jones, which was by the court denied.

The gist of appellant's several points complaining of error is, (1) that after the Land Bank had discovered the losses in suit, had furnished proof of loss, and liability denied, and while Ferguson was the registered owner of 927 shares of the Land Bank's stock, a dividend of $90 per share was declared thereon, the Land Bank thus becoming a debtor of Ferguson in the sum of $83,430; and its turning over to Ferguson said check without retaining the amount of these losses, thereby impaired the subrogation rights of the Insurance Company, resulting in its full release and discharge; (2) that aforesaid fact situation wholly estops the Land Bank from asserting liability against the insurer on account of the losses in suit; (3) that appellant's right of subrogation is impaired and it is fully released, notwithstanding pledge of the 927 shares to Mercantile National Bank and Morris, because these creditors held other collateral for payment of their notes, the value of all securities above Ferguson's debts being almost $100,000; that such excess of collateral legally and equitably entitled the Land Bank to compel a marshaling of securities held by the creditors

named, in which event, appellant would have been completely exonerated.

Under this policy, appellant was an insurer of the risk, and applicable thereto are rules governing insurance contracts rather than those of principal and surety. Also, appellant's obligation to the Land Bank being primary in character, the latter was not required to join the officer whose default occasioned the loss, or pursue any remedies against third parties as a condition of liability. American Indemnity Co. v. W. C. Munn Co., Tex. Civ.App., 278 S.W. 956 (writ refused); American Surety Co. of New York v. Austin, Tex.Com.App., 17 S.W.2d 777; 74 A.L.R. Annotation, p. 284. Accordingly, appellant tacitly admits that the claimed losses are within the policy terms, for its defenses are in the nature of a confession and avoidance, i.e., the existence of a cause of action, unless the Land Bank's right to recover has been lost by its payment of the liquidating dividend to the Mercantile National Bank, pledgee thereof. So here, the insurer's whole position appears to be that, notwithstanding the insurer's previous denial of liability, the Land Bank should have withheld from the dividend due Ferguson a sufficient amount to pay the policy losses; and by the Land Bank's failure to do so, its right to require a marshaling of assets by the Mercantile Bank and Morris, pledgees of the stock, was lost; with resulting estoppel and impairment of appellant's right of subrogation. In this connection, we point out that the policy contains no provisions expressly or impliedly reserving to the insurer any right of conventional subrogation as to a loss which it has not paid, and for which it has denied liability; or to the effect that the Insurance Company would be discharged of liability should the Land Bank fail to take any action either before or after the insurer's assertion of nonliability.

Of course, a person is not entitled to a legal right of subrogation until he has first paid the debt. 39 T. J., Subrogation, Secs. 8, 13, 37, pp. 761, 766, 799. Aside from this, the instant facts exclude any possible basis for appellant's claim. At all material dates, the Ferguson stock was in pledge; and even had appellant stood in the shoes of the Land Bank through subrogation, its rights would have been subordinate to these lienors relative to the dividends in question. The 927 shares were the property of the Mercan-

tile Bank and Wm. Morris to the extent of the debts due them. Baldwin v. Jordan, Tex.Civ.App. 171 S.W. 1016 (writ refused); 33 T.J., Pledges, Sec. 7, p. 689; with consequent right to their earnings. Especially so, when the dividend was in partial liquidation of the collateral and reduced pro tanto its value. "* * * it is the general rule * * * that the pledgee is entitled to all dividends distributed on pledged stock during the pendency of the pledge and that it is his right and his duty to collect them and apply them to the debt for which the stock is pledged or hold them as trustee for the pledgeor." 13 Am. Jur., Corporations, Sec. 704, p. 720. "If shares are assigned and notice of the assignment is given to the corporation before the dividend is declared, the right to the dividend passes to the assignee, and the corporation cannot set-off a debt to it from the assignor, incurred before the assignment." 2 Hildebrand, Texas Corporations, Sec. 489, p. 411, citing Gemmell v. Davis, 75 Md. 546, 23 A. 1032, 32 Am.St.Rep. 412.

Appellant urges that it should have had personal judgment over against Mrs. Jones, the secret profits having been retained while the parties were husband and wife, constituting a community debt; and upon divorce, Mrs. Jones having received community property of a value exceeding aforesaid profits and interest; if incorrect in this, that Mrs. Jones was at least personally liable to the extent of $2,388 of the South Texas profits deposited in her personal bank account and by her subsequently used and appropriated. As already mentioned, the trial court found that the moneys in suit ($6,581.35) had been used in acquisition and improvement of the Denton County lands set apart to Mrs. Jones in their divorce; in other words, the funds were traced to these lands and an equitable lien fixed thereon to the full measure of appellant's own liability. The ruling complained of was in accord with appellate decisions in point. See Grandjean v. Runke, Tex.Civ.App., 39 S.W. 945, where Mrs. Grandjean was held jointly liable with her divorced husband for a community debt to the extent of the community property received by her; also Boyd v. Ghent, 93 Tex. 543, 57 S.W. 25. A more recent authority involving a like contention is First National Bank of Brownwood v. Hickman, Tex.Civ.App., 89 S.W.2d 838, 843 (writ refused): "The point, in this regard, is that Mrs. Hickman was liable to

community creditors for the value of all community property which was partitioned to her, whether or not converted by her. This is correct. However, the bank was not entitled to an equitable lien upon specific partitioned property, and at the same time to recover a personal judgment for the value of that property. It had the right either to have the specific property subjected to its debt, or to hold Mrs. Hickman personally liable for its value. It could not do both."

■ The H. W. Ferguson appeal presents two questions, (1) that the fidelity company had obtained judgment against him before it had paid the debt for which it was surety; that said insurer had no such cause of action until it became subrogated to the rights of the Land Bank by payment; hence the rendition against him was premature and a nullity; (2) the judgment under review is not final, in that it is made contingent upon a future event (payment by the insurer) without fixing a time certain therefor; and fails to determine the status of the insurer's recovery against him in event it failed to become a subrogee; i.e., had discharged its own liability to the Land Bank. We overrule the propositions. Ferguson was primarily liable to the Land Bank as between himself and the Insurance Company and the latter was properly subrogated to the rights of such Bank in the one judgment that had first awarded the Land Bank full recovery for the loss sustained. The leading case of Skipwith v. Hurt, 94 Tex. 322, 60 S.W. 423, 425, is ample precedent for the instant procedure; also Rule 38, Texas Rules of Procedure (Third Party Practice). In the Skipwith appeal, Clay County had sued the sureties of its treasurer for a misappropriated bank deposit, and the sureties impleaded the banking company, asking to be subrogated to the rights of the County against the bank for the amount of judgment against them. The opinion pertinently states: "The act of the bank in misappropriating the money of the county made it primarily liable, at the option of the county; but, the county having elected not to sue the bank, the sureties ought not to be required to pay the money and await the result of a suit against the bank, but

are entitled to settle the whole matter in this action."

■ The judgment in question is final, as all litigated rights relative to the subject matter involved have been determined. The further proceedings required by the decree in complete satisfaction thereof are merely incidental to its proper execution. See Ware v. Jones, Tex.Com.App., 250 S.W. 663, and authorities there cited.

■ Appellee Land Bank, in cross-assignment, excepts to the court's award of interest on its recovery; claiming that same should have been allowed from the respective dates on which the secret profits were made and retained by Ferguson and Craddock, instead of from date of proof of loss (November 16, 1939) as fixed by the judgment. The additional interest, figured from the time the various sums were misapplied to November 16, 1939, is in the amount of $874.80; and appellees' statements and authorities in this regard are not challenged in adverse briefs. The policy in suit sets no particular time for payment of losses accruing under it. Ferguson and Craddock being liable to the Land Bank for legal interest from the time they received the secret profits, so also was their surety. Appellees' cross-point is well taken. American Surety Co. v. North Texas Nat. Bank, Tex.Civ.App., 14 S.W.2d 88 (reversed on other grounds); Royal Indemnity Co. v. North Texas Nat. Bank, Tex.Com.App., 25 S.W.2d 822; Arts. 5069, 5070, R.S.

The judgment in favor of the Land Bank is accordingly reformed by adding thereto legal interest on the losses from the time they were sustained to November 16, 1939, or additional interest in the sum of $874.-80; and upon payment thereof, the Insurance Company is entitled to recover a like amount over against cross-defendant H. W. Ferguson and against the lands of Mrs. Anne G. Jones as a further equitable lien thereon. All assignments of the appealing parties upon consideration are otherwise overruled; and as above reformed, the judgment of the court below is in all respects affirmed.

Reformed and affirmed.